**ENVIRONMENTAL TECHNOLOGY, INC., Plaintiff,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Defendant.**

**Civ. A. No. 3:92CV363.**

United States District Court, E.D. Virginia, Richmond Division.

Jan. 21, 1993.

As Amended, March 19, 1993.

---

Andrew Ray McRoberts, John R. Walk, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, VA, for Environmental Technology, Inc.

Robert William Jaspen, U.S. Attys. Office, Richmond, VA, Alan D. Margolis, Renee Sar-ajian, U.S. E.P.A., Office of Gen. Counsel, Washington, DC, for U.S. E.P.A.

## MEMORANDUM OPINION

SPENCER, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment. The underlying action involves a "reverse FOIA" claim filed by plaintiff Environmental Technology, Inc. ("ETI"), which seeks a permanent injunction preventing defendant United States Environmental Protection Agency ("EPA") from disclosing, pursuant to the Freedom of Information Act, certain information regarding a contract awarded to ETI by the EPA.

For the reasons discussed below, defendant EPA's motion for summary judgment will be DENIED, plaintiff ETI's motion for summary judgment will be GRANTED, and a permanent injunction will be ENTERED against defendant EPA.

### I. Factual Background

The facts of this case, which are not in dispute, are as follows:

Plaintiff ETI, a company which provides environmental cleanup services, was awarded a contract by Region III of the EPA on January 31, 1992, for certain environmental cleanup services and equipment. After the contract was awarded, the EPA received requests under the Freedom of Information Act from two competitors of ETI, OHM Corporation and Unidyne Corporation, seeking copies of the contract and certain related information. OHM sought "a copy of [the] contract, including all rates," while Unidyne sought copies of the contract, ETI's technical and cost proposal, the business clearance for the procurement and related documents, and a list of all bidders on the contract and their final bid prices.

The FOIA requests were processed by Marie Murphy, a contract officer for EPA Region III. She reviewed the documents requested, and notified ETI that the information had been requested under the FOIA. On April 2, April 3 and April 8, 1992, ETI sent Ms. Murphy letters setting forth its position concerning the confidentiality of the

information requested. After reviewing ETI's arguments, Ms. Murphy concluded that ETI's proposal itself was confidential. She also determined, however, that the information contained in attachments B–2 through B–6 of the contract was "unit price information," and therefore not entitled to confidential treatment.[1]

Pursuant to EPA regulations (see 40 C.F.R. §§ 2.205(f)(1)(i) and (f)(2)), Ms. Murphy sent ETI a letter on May 6, 1992, notifying it of her conclusion with respect to attachment B–6.[2] The letter informed ETI that the information would be released to the public within 10 working days unless EPA received notice of the filing of a federal court action to obtain judicial review of Ms. Murphy's decision and to obtain injunctive relief.

ETI responded by letter dated May 15, 1992, proposing certain restrictions with respect to the release of the contract information. In a May 27, 1992, letter, EPA responded that it could not abide by plaintiff's proposed restrictions, and informed plaintiff that the information would be released on May 29 unless EPA's counsel received notice by that date that a federal court action had been filed. Plaintiff filed the present action on May 29, 1992.

Plaintiff ETI asserts that it will suffer competitive harm if the EPA releases the information. In moving for summary judgment, ETI contends that FOIA Exemption 4, precluding disclosure of "trade secrets and commercial or financial information obtained from a person and privileged and confidential," is applicable. See 5 U.S.C. § 552(b)(4).

Both parties agree that the information at issue is "commercial or financial information" and that it was "obtained from a person" outside government. Thus, the Court must focus on whether the information, for purposes of Exemption 4, is "privileged and confidential."

## II. Discussion

■ A suit challenging a federal agency's decision to disclose records under the Freedom of Information Act (a "reverse FOIA suit") is cognizable only as an Administrative Procedure Act suit—the FOIA itself does not create a right of action. Chrysler Corp. v. Brown, 441 U.S. 281, 317–18, 99 S.Ct. 1705, 1725–26, 60 L.Ed.2d 208 (1979). Under the APA, an agency decision will be held unlawful only if it is arbitrary, capricious, or not otherwise in accordance with the law. 5 U.S.C. § 706(2)(A).

In Chrysler, the Supreme Court found that the Trade Secrets Act, 18 U.S.C. § 1905, bars disclosure of information that falls within Exemption 4 of the FOIA, and that a decision to disclose such information therefore would not be in accordance with the law. Chrysler, 441 U.S. at 318, 99 S.Ct. at 1726; Acumenics Research & Technology v. United States Dep't of Justice, 843 F.2d 800, 804 (4th Cir.1988). Thus, if the information at issue in this case is "privileged and confidential" and falls within Exemption 4, it should not be released.

■ In Critical Mass Energy Project v. Nuclear Regulatory Commission, 975 F.2d 871 (D.C.Cir.1992) (en banc), the D.C. Circuit redefined the concept of "confidential" information in situations involving information provided to the government on a voluntary basis. Such information is "confidential," the court held, "if it is of a kind that the provider would not customarily release to the public." Id. at 880.

In adopting this rule, the D.C. Circuit limited the application of the test it previously

---

1. Those attachments contain the specific rates that ETI included in its bid for labor and equipment and, according to ETI, "contain all necessary information not previously provided to competitors, necessary to derive ETI's 'General and Administrative' and 'Profit' multiplier[s] applicable to the contract."

    According to ETI, approximately one-half of the contract price in such contracts represents labor and equipment costs. That total, ETI says, can easily be determined by competitors because the types and amounts of labor and equipment

required are specified in the EPA's request for bids. The other half represents "Other Direct Costs." For that amount, EPA specified a base amount and required offerors to bid a "General and Administrative" and "Profit" multiplier to be applied to that base amount.

2. According to defendant EPA, this letter was intended to apply to attachments B–2 through B–5 as well, but those attachments were not mentioned in the letter.

established in *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C.Cir. 1974), to those situations in which an FOIA request involves financial or commercial information that a person was *obligated* to furnish to the government. *Critical Mass*, 975 F.2d at 880.[3]

While the Fourth Circuit, in *Acumenics*, adopted the *National Parks* test, *see* 843 F.2d at 807, the circuit court has not yet been presented with an opportunity to consider the D.C. Circuit's recent refinement of the test. As this Court finds the D.C. Circuit's reasoning in *Critical Mass* to be persuasive, it will employ that court's distinction between information voluntarily provided to the government and information provided pursuant to an obligation.

■ Applying the *Critical Mass* test to the facts stated above, it is clear that the information at issue was submitted voluntarily by ETI in response to the EPA's request for bids. It is also readily apparent that the information is of a kind that ETI would not customarily share with its competitors or with the general public. Accordingly, the information falls within Exemption 4, and should not be released.[4]

### III. Conclusions

For the reasons set forth above, defendant EPA's motion for summary judgment is hereby DENIED, plaintiff ETI's motion for summary judgment is GRANTED, and defendant EPA is ENJOINED from releasing the information at issue pursuant to the Freedom of Information Act.

An appropriate Order will issue.

And it is SO ORDERED.

### FINAL ORDER

This matter is before the Court on the parties' cross-motions for summary judgment. The underlying action involves a "reverse FOIA" claim filed by plaintiff Environmental Technology, Inc. ("ETI"), which seeks a permanent injunction preventing defendant

---

**3.** Under the *National Parks* test, such information is confidential if its disclosure is likely to "impair the Government's ability to obtain necessary information in the future," or "cause substantial harm to the competitive position of the person from whom the information was obtained." *National Parks*, 498 F.2d at 770.

**4.** Section 15.1001 of the Federal Acquisition Regulations states, *inter alia*,

(c) *Postaward notices.* (1) Promptly after award of contracts ..., the contracting officer shall notify unsuccessful offerors in writing, unless preaward notice was given.... The notice shall include— ...

(iv) The items, quantities, and unit prices of each award (if the number of items or other factors makes listing unit prices impracticable, only the total contract price need be furnished); and

(v) In general terms, the reason the offeror's proposal was not accepted, unless the price information in (iv) above readily reveals the reason. *In no event shall an offeror's cost breakdown, profit, overhead rates, trade secrets, manufacturing processes and techniques, or other confidential business information be disclosed to any other offeror.*

48 C.F.R. § 15.1001(c) (1991) (emphasis added).

Similarly, Section 15.1003 of the FAR, which provides for additional information to be provided to unsuccessful offerors upon written request when a contract was awarded on a basis of other than price alone, provides that

debriefing shall not reveal any information that is not releasable under the Freedom of Information Act; for example—

(1) Trade secrets;

(2) Privileged or confidential manufacturing processes and techniques; and

(3) Commercial or financial information that is privileged or confidential, including cost breakdowns, profit, indirect cost rates, and similar information.

48 C.F.R. § 15.1003(b).

Although defendant EPA argues that the Federal Acquisition Regulations mandate the release of unit price information as part of the postaward notification to unsuccessful offerors, the converse is actually true. The FAR in fact *prohibits* the release of such data in situations in which it constitutes "confidential business information."

As Section 15.1003 of the FAR contemplates the release of additional information to unsuccessful offerors beyond that automatically provided under Section 15.1001, it is clear that Section 15.1001's reference to "other confidential business information" must be construed at least as narrowly as the confidentiality requirements of Section 15.1003. Accordingly, if application of the *Critical Mass* test reveals that information is not releasable under Exemption 4 of the FOIA, is it also not releasable under Section 15.1001 of the FAR.

*Cf. AT & T Info. Sys., Inc. v. GSA*, 627 F.Supp. 1396, 1403–04 (D.D.C.1986), *rev'd on other grounds*, 810 F.2d 1233 (D.C.Cir.1987) (implying that Exemption 4 is coextensive with Sections 15.1001 and 15.1003 of the FAR).

United States Environmental Protection Agency ("EPA") from disclosing, pursuant to the Freedom of Information Act, certain information regarding a contract awarded to ETI by the EPA.

For the reasons discussed in the accompanying Memorandum Opinion, defendant EPA's motion for summary judgment is hereby DENIED and plaintiff ETI's motion for summary judgment is hereby GRANTED.

Defendant EPA is permanently ENJOINED from releasing the information at issue pursuant to requests under the Freedom of Information Act.

And it is SO ORDERED.

### ORDER

This matter is before the Court on defendant United States Environmental Protection Agency's motion, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, to alter or amend this Court's Memorandum Opinion and Final Order of January 21, 1993, in the above-captioned case.

Upon due consideration, and upon representation of defendant's counsel that defendant requires additional guidance as to its obligations under the Federal Acquisition Regulations, this Court hereby GRANTS defendant's motion, and ORDERS that the Court's Memorandum Opinion of January 21, 1993, shall be amended to add, at the end of the final paragraph of section II on page 5, a footnote numbered 4, which shall read as follows:

[Editor's Note: The amendment was incorporated into the published opinion].

This Court's Memorandum Opinion and Final Order of January 21, 1993, in all other respects shall remain in full force and effect.

And it is SO ORDERED.