**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 68, Robert Legino, James Riney, Plaintiffs–Appellants and Cross–Appellees,**

v.

**DENVER METROPOLITAN MAJOR LEAGUE BASEBALL STADIUM DISTRICT, John S. Lehigh and Thomas L. Gleason, Defendants,**

**and**

**Riviera Electric, Inc., Intervenor–Cross–Appellant.**

**No. 93CA1554.**

Colorado Court of Appeals, Div. IV.

June 16, 1994.

Brauer, Buescher, Valentine, Goldhammer & Kelman, P.C., Walter C. Brauer, III, Dennis E. Valentine, Ellen M. Kelman, Denver, for plaintiffs-appellants and cross-appellees.

DiManna & Jackson, Gary M. Jackson, Denver, for defendants.

Stettner, Miller and Cohn, P.C., Kenneth R. Stettner, Bruce C. Anderson, Denver, for intervenor-cross-appellant.

Opinion by Judge DAVIDSON.

In this action for disclosure of documents under the Colorado Open Records Act, plaintiffs, International Brotherhood of Electrical Workers Local 38, Robert Legino, and James Riney (IBEW), appeal from the judgment of the trial court allowing the redaction of certain information from bid proposal and pre-qualification documents under the statutory exemption for confidential financial information. Intervenor, Riviera Electric, Inc. (Riviera), cross-appeals from the judgment of the trial court determining that the documents are public records subject to disclosure. We reverse and remand.

M.A. Mortenson/Barton Marlow (MBM) is the general contractor responsible for construction of the Coors Baseball Stadium pursuant to an agreement with defendant, Denver Metropolitan Major League Baseball Stadium District (Stadium District). Riviera is the electrical subcontractor chosen by MBM to perform electrical work on the stadium. As part of the selection process, Riviera submitted pre-qualification documents and a bid proposal package to MBM. Although MBM kept custody and control of the documents, the Stadium District had access to the documents for review prior to interviewing the final candidates for the electrical subcontract.

IBEW submitted a request to the Stadium District for documents relating to award of the electrical subcontract to Riviera. The requested bid proposal documents were produced in a heavily redacted form. No pre-qualification documents were produced. IBEW filed suit and the trial court issued an order to show cause why the redacted material and pre-qualification documents should not be produced pursuant to the Colorado

Open Records Act, § 24–72–101 et seq, C.R.S. (1988 Repl.Vol. 10B).

Two days before the hearing, Riviera moved to intervene. The trial court allowed the intervention. Riviera and the Stadium District then moved for a brief continuance in order to produce the officer of Riviera who had performed the redaction of the bid proposal documents. The trial court denied the continuance with leave to reconsider if, in its view, the testimony of this witness should appear to be critical.

Only two witnesses were called by the Stadium District, one of whom was the vice president of MBM. After engaging in extensive questioning of this witness, the trial court ruled that the requested documents were public records but that it did not need any further testimony regarding the redactions and that the bulk of the redacted material was protected from disclosure as confidential financial information. The trial court further ruled that the pre-qualification documents were also public records subject to disclosure. After Riviera objected on the grounds that the pre-qualification documents also contained protected information, the trial court allowed for redaction of these documents as well.

Both IBEW and Riviera have appealed the trial court's determinations. Because the issues on appeal and cross-appeal are interrelated, we will discuss them together. The Stadium District is not a party to this appeal.

## I.

IBEW first argues that it was error for the trial court to allow Riviera to intervene. We disagree.

C.R.C.P. 24(a)(2), as pertinent here, provides for intervention of right as follows:

> Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

▪ Here, Riviera has a significant interest in sensitive financial information which is contained within the bid proposal and pre-qualification documents. *See Denver Publishing Co. v. University of Colorado,* 812 P.2d 682 (Colo.App.1990) (former university chancellor intervened in action to obtain disclosure of documents relating to his termination). IBEW claims, however, that the Stadium District was capable of protecting Riviera's interest in this litigation. We do not agree.

▪ A party seeking intervention under C.R.C.P. 24(a)(2) must establish both that the representation of its interest is not or may not be adequate and that it would or might be bound by the judgment. *Howlett v. Greenberg,* 34 Colo.App. 356, 530 P.2d 1285 (1974).

Here, although the Stadium District was not in possession of the documents at issue because they were kept by MBM, the trial court found with record support that the Stadium District used and relied upon the documents and was therefore the custodian of the documents for the purposes of this action. The Stadium District, as custodian, would be required to disclose whatever information the trial court determined was not protected and Riviera would be unable to prevent that disclosure. Riviera was thus bound by the outcome of this action.

Further, MBM relied upon Riviera to determine what portions of the documents were likely to be protected as confidential financial information. That MBM did not redact the documents itself without input from Riviera demonstrates that Riviera possessed superior knowledge concerning the potential effects of the redacted material.

We conclude that Riviera's presence as a party to the litigation was necessary in order for it to present evidence to establish that disclosure of the redacted material would be injurious to its competitive position in the industry. *Cf. Washington Post Co. v. New York State Insurance Department,* 61 N.Y.2d 557, 475 N.Y.S.2d 263, 463 N.E.2d 604 (1984) (insurance companies granted leave to intervene in action to disclose minutes of company

meetings which had been furnished to the state department of insurance).

■ IBEW also argues that intervention was improper because it was not requested in a timely manner. Because Riviera's motion to intervene was filed just prior to the hearing on the merits, IBEW contends that the request should have been denied. However, the point of progress in a lawsuit at which intervention is attempted is only one factor to be considered and is not determinative in and of itself. *Diamond Lumber, Inc. v. H.C.M.C., Ltd.*, 746 P.2d 76 (Colo.App. 1987). Here, the complaint and request for show cause order was filed on August 16, 1993. The trial court issued the show cause order on August 17, 1993 and the hearing was scheduled for August 27, 1993. Riviera's motion to intervene was filed August 25, 1993 and ruled upon by the trial court the morning of hearing.

Thus, considering that the motion was filed only ten days after the issuance of the show cause order, and that IBEW has shown no resulting prejudice from the trial court's ruling, under the circumstances, the trial court did not err in allowing Riviera to intervene. *See Diamond Lumber, Inc. v. H.C.M.C., Ltd., supra.*

## II.

■ As a threshold matter, the trial court ruled that the documents at issue here are public records subject to disclosure and that the Stadium District is the custodian of those records for purposes of the Colorado Open Records Act. Riviera argues on cross-appeal that this determination was in error because the documents were never in the possession of the Stadium District. We agree with IBEW that the documents are nonetheless public records because they were used by the Stadium District in the exercise of its official functions.

"Public Records" is defined in § 24–72–202(6), C.R.S. (1988 Repl.Vol. 10B) as:

all writings made, maintained, or kept by the state or any agency, institution, or political subdivision thereof for use in the exercise of functions required or authorized by law or administrative rule or involving the receipt or expenditure of public funds[, exclusive of] criminal justice records.

According to § 24–72–202(1), C.R.S. (1988 Repl.Vol. 10B), " 'Custodian' means and includes the official custodian or any authorized person having personal custody and control of the public records in question." According to § 24–72–202(2), C.R.S. (1988 Repl.Vol. 10B), " 'Official custodian' means and includes an officer or employee of the state or any agency, institution, or political subdivision thereof who is responsible for the maintenance, care, and keeping of public records, regardless of whether such records are in his actual personal custody and control."

Testimony at the hearing indicated that the documents at issue, while never in the actual personal control or custody of any employee or officer of the Stadium District, were maintained by MBM in such a manner as to give the Stadium District full access to the documents. The documents were used by at least one employee of the Stadium District in the process of approving the selection by MBM of Riviera as electrical subcontractor for the new baseball stadium, a project involving the expenditure of public funds.

Thus, that the records were not made or kept by the Stadium District is not determinative and the record supports the trial court's factual determination that the documents were public records in the custody of the Stadium District. *See Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

## III.

IBEW argues that, although it correctly found the documents to be public records, the trial court erred in determining that the redacted portions of the bid disclosure and pre-qualification documents were protected. We hold that, pursuant to the test adopted in *Freedom Newspapers, Inc. v. Denver & Rio Grande Western R.R. Co.*, 731 P.2d 740 (Colo.App.1986), regarding the applicability of the exemption from disclosure for confidential financial information, and given the factual and procedural circumstances present here, further proceedings are required.

## A.

IBEW first argues that the redacted material is not protected as a matter of law because, as successful bidders, Riviera could not have had a reasonable expectation that any of this information would not be released to the public. We disagree.

In support of its position, IBEW contends that a successful bidder has a lesser expectation of confidentiality in information relating to the award of a government contract than does an unsuccessful bidder. *See Freedom Newspapers, Inc. v. Denver & Rio Grande Western R.R. Co., supra* (although some harm would result from the disclosure of contract terms, such is the cost of doing business with the government); *Racal–Milgo Government Systems, Inc. v. Small Business Administration,* 559 F.Supp. 4 (D.D.C.1981) (disclosure of prices charged the government pursuant to a contract which incorporated the bid proposal by reference was a cost of doing business with a government agency under the federal Freedom of Information Act); *Professional Standards Review Council of America, Inc. v. New York State Department of Health,* 193 A.D.2d 937, 597 N.Y.S.2d 829 (App.Div.1993) (party resisting disclosure did not show that it had a reasonable expectation that its bid on a public contract would not be open to public inspection pursuant to New York open records statute).

While in general we have no quarrel with this premise, we do not agree that confidential financial information contained in bid related documents is *per se* unprotected if the bid is successful.

The purpose of open records statutes is to assure that the workings of government are not unduly shielded from the public eye. *See Denver Publishing Co. v. Dreyfus,* 184 Colo. 288, 520 P.2d 104 (1974); *see also United States Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (construing the federal Freedom of Information Act). This purpose is of unequivocal significance in situations where the expenditure of public funds is concerned. *See Denver Publishing Co. v. University of Colorado, supra.* The Colorado Open Records Act thus provides for a presumption in favor of disclosure. *See Denver Post Corp. v. University of Colorado,* 739 P.2d 874 (Colo. App.1987).

Nonetheless, the Colorado Open Records Act contains an explicit exemption, similar to that in the federal Freedom of Information Act, 5 U.S.C. § 552(b)(4) (1988), for confidential financial information. Section 24–72–204(3)(a)(IV), C.R.S. (1988 Repl.Vol. 10B) provides that: "The custodian shall deny the right of inspection of the following records ... [t]rade secrets, privileged information, and confidential commercial, financial, geological, or geophysical data furnished by or obtained from any person."

Open records statutes do not necessarily provide for release of information merely because it is in the possession of the government. *See United States Department of Justice v. Reporters Committee for Freedom of the Press, supra.* As Riviera points out, all information concerning the "bottom-line" prices under the subcontract has been disclosed. The redacted material, in contrast, may contain information which was not ultimately incorporated into the electrical subcontract negotiated between Riviera and MBM and approved by the Stadium District.

This information may pose a substantial risk to Riviera's competitive position if it is made available to competitors. *See National Parks & Conservation Ass'n v. Morton,* 498 F.2d 765 (D.C.Cir.1974) (disclosure of financial information related to government concession contract might harm the suppliers' competitive position in non-concession enterprise). Therefore, we conclude that the trial court was correct in finding that the confidential financial information exemption may provide protection for certain information here. *Cf. Environmental Technology, Inc. v. United States Environmental Protection Agency,* 822 F.Supp. 1226 (E.D.Va.1993) (information submitted in support of a bid for a government contract was of the type not normally disclosed to the public).

## B.

IBEW contends that, even if the confidential financial information exemption

applies to some of the information sought, the trial court erred in finding the redacted material protected based solely upon the opinion of the Stadium District witness that the information was confidential. We agree that the evidence presented at the hearing was inadequate to establish that the redacted material was protected by the confidential financial information exemption.

### 1.

Pursuant to § 24–72–204(3)(a)(IV), if disclosure of financial information would be likely either: "(1) to impair the government's future ability to gain necessary information; or (2) to cause substantial harm to the competitive position of the person providing the information" the financial information is confidential for purposes of the statutory exemption. *Freedom Newspapers, Inc. v. Denver & Rio Grande Western R.R. Co., supra* 731 P.2d at 743.

This test was drawn from *National Parks & Conservation Ass'n v. Morton, supra,* in which the court determined that if the government cannot assure confidentiality of sensitive financial data, its ability to obtain such information may be impaired, and that the person submitting the information is entitled to a measure of protection from competitive disadvantages resulting from publication.

Although the *Morton* test has been adopted in nearly every federal or state jurisdiction which has considered the question, the authoring court has recently re-evaluated this issue and held that the *Morton* test applies only to information which is not voluntarily disclosed to the government. The court began with the premise, recognized in *Morton,* that if the submission of information is required by government mandate, there is presumably no danger that public disclosure would impair the government's ability to obtain such information in the future. Under certain circumstances, the court reasoned, the accuracy, but not the availability, of required information might be affected by the threat of disclosure. On the other hand, when the information is volunteered, the court presumed that disclosure will threaten future cooperation and the ability to collect voluntary information would be at risk. *See*

*Critical Mass Energy Project v. Nuclear Regulatory Commission,* 975 F.2d 871 (D.C.Cir.1992).

Accordingly, the court concluded that it was appropriate to apply a different standard when information is submitted voluntarily. It held that when information is submitted involuntarily, the party opposing disclosure must show either that the government's ability to obtain such information would likely be impaired or that the competitive position of the supplier of the information would likely be substantially harmed, but when information is submitted voluntarily, the party opposing disclosure must demonstrate only that it is "of a kind that would customarily not be released to the public by the person from whom it was obtained." *Critical Mass Energy Project v. Nuclear Regulatory Commission, supra* 975 F.2d at 879.

Apparently, this new standard for protection of information voluntarily submitted to the government is a subjective test under which "it will do for an agency official to agree with the submitter's ascription of confidential status to the information." *Critical Mass Energy Project v. Nuclear Regulatory Commission, supra* 975 F.2d at 885 (Ginsberg, J., dissenting).

As such, the *Critical Mass* test appears to be irreconcilable with the intent of the Colorado Open Records Act and the concurrent strong presumption in favor of disclosure. *See Denver Publishing Co. v. University of Colorado, supra* (it would be inconsistent with the public policy underlying the Colorado Open Records Act to conclude that records are entitled to a blanket nondisclosure exemption simply because the custodian agency placed them with a confidential personnel file).

Moreover, it is unclear from the *Critical Mass* decision what distinguishes a "voluntary" submission from a required submission.

In our view, in keeping with the underlying rationale for the distinction articulated by the *Critical Mass* court, the determination whether a submission is voluntary should turn on the nature of the submission and not on the nature of the underlying activity. *See National Parks & Conservation Ass'n v.*

*Morton, supra* (although the concessionaires voluntarily engaged in business with the government, they were required to provide financial information concerning their operations).

For example, the information submitted by Riviera here was required as part of the bid process, and it is unlikely that companies will stop competing for government contracts if information relating to bids is subject to disclosure. *See Racal–Milgo Government Systems, Inc. v. Small Business Administration, supra; Freedom Newspapers, Inc. v. Denver & Rio Grande Western R.R. Co., supra* (no significant impairment to the ability to collect information is likely because of disclosure of the terms of a government contract for transportation services).

Thus, submitting a response to a request for bids from a government agency to secure a government contract should be categorized as voluntary, but disclosure of commercial or financial information in support of that bid is, in our estimation, a required submission. In contrast, we would regard voluntary submissions as including certain financial and commercial information electively submitted to the government for purposes of market news services, labor and wage statistics, commercial reports, and other services which are regarded as valuable by the cooperating reporters, the public and the agencies. *See National Parks & Conservation Ass'n v. Morton, supra.*

However, the limited jurisprudence subsequent to the *Critical Mass* decision indicates that this pivotal distinction may not develop with any appreciable consistency. *Compare Allnet Communication Services, Inc. v. Federal Communications Commission,* 800 F.Supp. 984 (D.D.C.1992) (in order to participate in computerized cost estimation program implemented in conjunction with F.C.C., telecommunications company was required to submit proprietary information to F.C.C.) *with Environmental Technology, Inc. v. United States Environmental Protection Agency, supra* (bid proposal information provided by environmental decontamination service in response to an EPA request for bids was entitled to expanded protection under the *Critical Mass* test as a voluntary submission).

For these reasons, we conclude that to adopt the *Critical Mass* test would undermine predictability in what has been a reasonably established area of law and, more importantly, would invite the cloaking of information in a subjectively employed label of "confidential" and expand protection beyond what was contemplated by the Colorado Open Records Act. *Cf. Critical Mass Energy Project v. Nuclear Regulatory Commission, supra* 975 F.2d at 885 (Ginsberg, J., dissenting) ("There will be no objective check on, no judicial review to alert to, the temptation of government and business officials to follow the path of least resistance and say confidential whenever they seek to satisfy the government's vast informational needs").

Therefore, we conclude that under the Colorado Open Records Act, it remains insufficient as a matter of law merely to classify the information as confidential. *See Freedom Newspapers, Inc. v. Denver & Rio Grande Western R.R. Co., supra; National Parks & Conservation Ass'n v. Morton, supra* (that the information was the kind which generally would not be made available for public perusal is insufficient to support a finding that the confidential financial information exemption applies); *Washington Post Co. v. New York State Insurance Department, supra* (government agency's longstanding promise of confidentiality to insurance companies was irrelevant to whether the requested documents were public records subject to disclosure); *cf. Denver Publishing Co. v. University of Colorado, supra* (in order to be protected as part of employee personnel files, documents must be *properly* placed in the personnel files).

Because the testimony upon which the trial court relied merely asserted that the information was of the kind which would be considered confidential within the industry, it was error to conclude that the confidential financial information exemption applied.

## C.

Although the evidence presented by the Stadium District was insufficient to establish that the redacted material was confidential

commercial or financial information, Riviera had represented to the court in its request for a continuance that it had a witness who was expected to testify that the disclosure of the redacted material would be likely to cause substantial harm to its competitive position. Because Riviera's request for a continuance was improperly denied, the matter must be remanded to allow Riviera an opportunity to present such evidence.

 Although the statute does not explicitly place the burden of establishing the applicability of the confidential financial exemption upon the party opposing disclosure, because that party is likely to possess superior knowledge as to the nature of the information, common sense and the presumption in favor of disclosure suggest that the burden ought to rest upon it to overcome that presumption and not upon the citizen to demonstrate disclosure is warranted. *See National Parks & Conservation Ass'n v. Morton, supra* 498 F.2d at 770 ("The exemption may be invoked for the benefit of the person who has provided commercial or financial information if it can be shown that public disclosure is likely to cause substantial harm to his competitive position."); *Professional Standards Review Council of America, Inc. v. New York State Department of Health, supra* (burden of proof rests upon the party claiming an exemption from disclosure); *cf.* § 24–72–204(6), C.R.S. (1988 Repl.Vol. 10B) (placing burden of proof upon the agency resisting release of otherwise publishable information on the grounds that disclosure would cause substantial injury to the public interest).

 The decision to grant or deny a request for a continuance generally is within the discretion of the trial court. *See In re Estate of Hicks,* 155 Colo. 463, 395 P.2d 224 (1964). Here, however, the court apparently denied the request for a continuance on the basis that Riviera's additional evidence was not necessary, rather than because it would unduly delay or complicate the proceedings. The court also misconstrued the standard by which it was to evaluate the confidentiality of the documents at issue, and mistakenly concluded that the testimony presented was sufficient.

We conclude, therefore, that under these unique circumstances, it was an abuse of discretion to deny Riviera's request for a continuance. Accordingly, the judgment must be reversed and the matter returned to the trial court so that Riviera may have an opportunity to present its witness. *See Pollard v. Walsh,* 194 Colo. 566, 575 P.2d 411 (1978).

In light of our disposition of these issues, we do not address the parties' remaining contentions.

The judgment is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion.

HUME and NEY, JJ., concur.