2013 COA 123

**MOUNTAIN–PLAINS INVESTMENT CORPORATION; John Robert Fetters, Jr.; Joann Dransfeldt Fetters; A. Sue Fetters; and John R. Fetters III, Plaintiffs–Appellants and Cross–Appellees,**

v.

**PARKER JORDAN METROPOLITAN DISTRICT, a quasi–municipal organization, Defendant–Appellee and Cross–Appellant.**

Court of Appeals No. 12CA1034

Colorado Court of Appeals,
Div. V.

Announced August 15, 2013

Condit Csajaghy LLC, Stephen E. Csajaghy, Marisa B. Hudson–Arney, Denver, Colorado, for Plaintiffs–Appellants and Cross–Appellees

Sherman & Howard LLC, Joseph J. Bronesky, Laci Kazanovicz, Denver Colorado, for Defendant–Appellee and Cross–Appellant

Colorado Municipal League, Geoffrey T. Wilson, Denver, Colorado, for Amici Curiae Colorado Municipal League; Colorado Counties, Inc.; the Special District Association of Colorado; and the Colorado Association of School Boards

Opinion by JUDGE PLANK *

¶ 1 Plaintiffs, Mountain–Plains Investment Corporation, John Robert Fetters, Jr., Joann Dransfeldt Fetters, A. Sue Fetters, and John R. Fetters III (collectively Mountain–Plains), commenced this action in the Arapahoe County District Court alleging violation of the Colorado Open Records Act (CORA) by defendant, Parker Jordan Metropolitan District (District). The District counterclaimed, and both parties filed C.R.C.P. 56 motions on the claims raised in the complaint and counterclaim. The trial court granted summary judgment for the District on all but one of the claims and awarded costs. Plaintiffs appeal the trial court's judgment as to all claims but the one on which they prevailed, as well as the trial court's denial of their request for fees; the District cross-appeals on the remaining claim. We affirm in part and reverse in part.

## I. Background

¶ 2 Mountain–Plains Investment Corporation is a Colorado corporation and the Fetterses—individual citizens and property

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S. 2012.

owners residing in Arapahoe County—are shareholders of Mountain–Plains Investments. The District is a quasi-municipal, governmental entity governed by a board of directors. The District has no offices or employees, and its daily affairs are handled by a management company, CliftonLarsonAllen LLP (Clifton), which also acts as the District's custodian of records.

¶ 3 The District purchased 81.8 acres of undeveloped property from plaintiffs in 2009, memorialized in a purchase/sale agreement, for a multi-million dollar stream improvement project on the land that would also benefit plaintiffs' remaining property. Pursuant to the purchase agreement, the District was required to keep plaintiffs apprised of the project developments.

¶ 4 In September 2011, plaintiffs sent an e-mail to the District requesting ". . . all copies of the stream improvement project work to date. This would include, but not [be] limited to, all meeting agendas, meeting minutes, agreements, executive session minutes, e-mails, plans, engineering etc." The District provided plaintiffs with meeting agendas, meeting minutes, agreements, and plans related to the Agreement, but informed plaintiffs that it would not provide the e-mails or executive session minutes.

¶ 5 Plaintiffs then made two CORA requests by letter, the first dated October 24, 2011, and the second dated November 9, 2011.

¶ 6 The first letter requested access to "all correspondence and communications by or between [the District], the City of Centennial, Urban Drainage Flood Control District, J3 Engineering Consultants, and/or the United States Army Corps of Engineers that in any way" relate to the project. The District responded by informing plaintiffs that it did not possess all the e-mail communications sent to or from third-party consultants and contractors, and that for the District to comply with the request, plaintiffs would be charged a fee of $16,025 (an estimated $14,-305 for retrieving the e-mails and $1720 for the District's general counsel to review them for privilege).

¶ 7 Plaintiffs' second CORA request sought access to documents that in any way reflected or referred to any communications by and between the District, Clifton, and any person acting on behalf of the District pertaining in any way to the first CORA request. The District's general counsel responded by phone to plaintiffs' counsel. The parties agreed to refrain from further action until the District's general counsel spoke with the board of directors at a November 15, 2011, board meeting. At the meeting, the District's board approved a motion requiring plaintiffs to deposit $2500 and sign a commitment to pay the District $25 per hour for the time needed to research, review, and make available the requested public records. Plaintiffs' counsel was present at the meeting.

¶ 8 Plaintiffs did not pay a deposit and the District did not produce any documents pursuant to the two CORA requests. Instead, on November 18, 2011, plaintiffs commenced this action in the District Court of Arapahoe County, pursuant to CORA, sections 24–72–201 to –206, C.R.S. 2012, to compel disclosure of the requested documents without payment of the fees, to declare the District in violation of CORA, and to recover attorney fees and costs.

¶ 9 The District answered the complaint and filed a counterclaim requesting declaratory judgment pursuant to sections 13–51–101 to –115, C.R.S. 2012, and C.R.C.P. 57, and injunctive relief pursuant to C.R.C.P. 65, alleging that the CORA requests were "impossibly broad and harassing" and denying any violation of CORA. The District sought a declaration that it did not have to provide access to e-mails generated by consultants but not in its possession because they are not public records under CORA. Alternatively, the District claimed that, if such e-mails were deemed to be public records, it could withhold privileged documents and charge a fee of $25 per hour to identify and compile the e-mails.

¶ 10 Plaintiffs responded by filing a C.R.C.P. 56(h) motion seeking determinations of law that:

A. "E-mails concerning the stream development project in the possession of

third persons (which [the District] classifies as 'consultants' to the stream development project) are in the "custody and control" of [the District] for purposes of CORA and therefore subject to [plaintiffs'] first open records request of October 24;

B. While [the District] may charge a "nominal research and retrieval fee" to [plaintiffs] to identify and collect public e-mails responsive to [plaintiffs'] open records requests under *Black v. Southwestern Water Conservation District*, 74 P.3d 462, 471–72 (Colo.App.2003), CORA *prohibits* [the District] from charging ... thousands of dollars [for] time ... to: 1) review the e-mails responsive to the open records request; 2) determine whether any responsive materials were subject to the privilege exemptions under the Act; and 3) identify e-mails that may be subject to other privileges and prepare a privilege log;

C. As [plaintiffs] merely requested access to e-mails and not that any new report or tabulation be generated, [plaintiffs'] request for access to public e-mails is not a "manipulation of data so as to generate a record in a form not used" by [the District] pursuant to [ ][section] 24–72–205[, C.R.S. 2012]; and

D. [The District's] demand for thousands of dollars in improper fees did not "suspend" [the] deadline to make public materials available to [plaintiffs] under the deadlines stated in CORA, and [the District] is therefore in violation of CORA."

(Additional citations omitted.)

¶ 11 The District moved for summary judgment, and the trial court ordered the following: (1) the District must open for inspection all communications concerning the Project that were transmitted to or by Clifton; (2) the District may charge $ 25 per hour to retrieve and compile the records in question; (3) the District may only charge a fee for researching and retrieving the records as if they were stored locally with the District; (4) any expenses associated with identifying privileged documents shall not be charged to the plaintiffs; (5) any expenses associated with producing a privilege log may be charged to plaintiffs; (6) there was no violation of CORA; and (7) the District may recover costs.

## II. Issues on Appeal

¶ 12 Plaintiffs contend the trial court erred by: (1) denying plaintiffs' request to make all e-mails concerning the project available pursuant to CORA, including those in the possession of third-party consultants; (2) finding that the District was not in violation of CORA even though the District (a) demanded fees and a deposit before providing access to e-mails; (b) demanded fees in the absence of any policy, rule, or regulation in place requiring such fees; and (c) failed to respond to the second CORA request; (3) ruling that the District could charge a fee for the creation of a privilege log; and (4) denying attorney fees and costs to plaintiffs based on the alleged CORA violations.

¶ 13 The District contends the trial court erred in ordering that the $ 25 per hour fee could not be assessed against plaintiffs for identifying and segregating privileged records.

## III. Standard of Review

¶ 14 We review de novo questions of law concerning the correct construction and application of CORA. *Denver Publ'g Co. v. Bd. of Cnty. Comm'rs*, 121 P.3d 190, 195 (Colo.2005); *Sooper Credit Union v. Sholar Grp. Architects, P.C.*, 113 P.3d 768, 771 (Colo. 2005). Our duty is to effectuate the General Assembly's intent, giving all the statutory words their plain and ordinary meaning, harmonizing potentially conflicting provisions, and resolving conflicts and ambiguities in a way that implements the legislature's purpose. *Denver Publ'g Co.*, 121 P.3d at 195; *Freedom Newspapers, Inc. v. Tollefson*, 961 P.2d 1150, 1153 (Colo.App.1998); *Zubeck v. El Paso Cnty. Ret. Plan*, 961 P.2d 597, 598 (Colo.App.1998).

¶ 15 We read undefined words and phrases in context, construing them literally according to common usage. *Denver Publ'g Co.*, 121 P.3d at 195. But where a term is

defined by a statute, the statutory definition governs. *See Klinger v. Adams Cnty. Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006) (we construe words and phrases literally according to common usage "unless they have acquired a technical meaning by legislative definition").

## IV. Applicability of CORA

¶ 16 Plaintiffs contend the trial court erred in requiring the District to make some, but not all, e-mails concerning the stream development project available to plaintiffs for inspection and review. We disagree.

¶ 17 CORA requires that all public records be open for inspection, subject only to prescribed exceptions. § 24–72–201, C.R.S. 2012; *Denver Publ'g Co.*, 121 P.3d at 195. CORA defines a "public record" as "all writings made, maintained, or kept by the state ... for use in the exercise of functions required or authorized by law ... or involving ... public funds." § 24–72–202(6)(a)(I), C.R.S. 2012.

¶ 18 By its terms, CORA balances the public interest in access to information about how the government operates against the privacy interests of public officials and employees. Ch. 271, sec. 1, 1996 Colo. Sess. Laws 1479; *see Denver Publ'g Co.*, 121 P.3d at 194 (citing legislative declaration of intent for 1996 amendments to CORA, which addressed e-mail).

¶ 19 Consequently, although the statute generally favors access, CORA does not require public disclosure of all documents in the custody of state employees or agencies. *See* § 24–72–201, C.R.S. 2012 (declaring legislative intent to make all "public records" available for inspection); *Denver Post Corp. v. Ritter*, 230 P.3d 1238, 1240 (Colo.App. 2009), *aff'd*, 255 P.3d 1083 (Colo.2011).

¶ 20 Thus, both the definition of "public records" and the enumerated exceptions limit which documents are required to be disclosed. *See Denver Publ'g Co.*, 121 P.3d at 194 (recognizing "the privacy protection

already integrated into CORA's express statutory provisions").

¶ 21 Here, as in most CORA cases, the threshold question is whether the requested records are public records. *See, e.g., id.* at 191; *Wick Commc'ns Co. v. Montrose Cnty. Bd. of Cnty. Comm'rs*, 81 P.3d 360, 361 (Colo. 2003).

¶ 22 A public record is a writing:

made, maintained, or kept by *the state, [or by] any agency, institution, ... or political subdivision of the state*[1] *... for use in the exercise of functions required or authorized by law* or administrative rule or involving the receipt or expenditure of public funds.

§ 24–72–202(6)(a)(I) (emphasis added).

¶ 23 When it is not clear whether the record is private or public, the court must determine as a threshold matter whether the requested records are likely public records as defined by CORA. *Wick Commc'ns*, 81 P.3d at 363. When the custodian is a government agency, the burden of proving that a record is not public is on that agency because it holds the necessary information. *Id.* at 363–64.

¶ 24 CORA provides a two-part framework to ascertain whether a writing is a public record subject to disclosure under CORA: (1) who made, maintained, or kept the requested record, and (2) why he, she, or it did so. *See Denver Post*, 255 P.3d at 1089.

¶ 25 Plaintiffs assert that e-mails in the possession of the District's consultants are in the custody and control of the District for CORA purposes, and therefore, the District is required to maintain these records for inspection. We conclude that communications not received, possessed, or maintained by the District, through Clifton, are not public records. However, we also conclude that the District is required to produce communications concerning the project sent to or received by the District, through Clifton, including those received from J3 Engineering Consultants.

---

1. "Political subdivision," as used in CORA, means "every county, city and county, city, town," §§ 24–72–202(5), 29–1–901(2), C.R.S. 2012, or "any other kind of municipal, quasi-municipal, or public corporation organized pursuant to law." § 29–1–901(2).

¶ 26 E-mails may be deemed public records if, like other writings, they were made, maintained, or kept by the government for use in the exercise of functions required or authorized by law or administrative rule or involving the receipt or expenditure of public funds. *See* § 24–72–202(7), C.R.S. 2012 (CORA defines "writings" to include "digitally stored data, including without limitation electronic mail messages"); *Denver Publ'g Co.*, 121 P.3d at 199 ("To be a 'public record,' an e-mail message must be for use in the performance of public functions or involve the receipt and expenditure of public funds.").

¶ 27 The District is a quasi-municipal entity under section 29–1–901(2) and therefore subject to CORA under section 24–72–202(6)(a)(I). Clifton is a private entity that serves as the custodian of records for the District pursuant to sections 24–72–202(1.1) and 24–72–203(1)(a), C.R.S. 2012.

¶ 28 In finding section 24–72–203(3)(a), C.R.S. 2012,[2] applicable, the trial court concluded that, because Clifton manages the District's day-to-day affairs, all records transmitted to or by Clifton were imputed to the District, and therefore, are public records subject to CORA.

¶ 29 We agree that e-mails transmitted to or by Clifton are records that were kept by the District because they were in its "care, custody, or control." *See Denver Post*, 255 P.3d at 1091–92 ("To 'keep' a 'writing' means to have the care of that writing. One 'keeps' a 'writing' when it is in his care, custody, or control.") (citing *Webster's Third New Int'l Dictionary* 1235 (2002)).

¶ 30 In *International Brotherhood of Electrical Workers Local 68 v. Denver Metropolitan Major League Baseball Stadium District*, 880 P.2d 160, 164 (Colo.App.1994) (*IBEW*), a division of this court determined that bid proposal and prequalification documents were "public records" because, *inter alia*, they were maintained by a contractor in such a manner as to give the stadium owner—a "political subdivision" under section 29–1–901(2)—full access to them, and at least one employee of the stadium owner referred to the documents in awarding contracts for electrical work.

¶ 31 Here, with respect to plaintiffs' contention that the District was required to produce e-mail communications of J3, a private engineering consulting consortium, it is undisputed that e-mails sent between J3 and the other named public entities were not made by the District, through Clifton, maintained by Clifton (other than those on which Clifton was copied or those which were forwarded to Clifton), or kept by Clifton.

¶ 32 Plaintiffs assert, nonetheless, that all e-mails among the entities related to the project were kept for the purpose of providing information to the District and are, therefore, subject to CORA. However, the record does not show that J3 maintained the e-mails to give the District or Clifton full access to them. Therefore, we cannot conclude that the District or Clifton made, maintained, or kept e-mails not in their possession. *See IBEW*, 880 P.2d at 164.

¶ 33 There are few cases interpreting the "public records" definition as applied to records of third parties and no cases that address the applicability of the definition to e-mail messages sent or received by a private third party, not in the possession of a public entity. Colorado courts have addressed (1) the privacy implications of documents made by public officials in *Wick*, 81 P.3d at 364–66; (2) e-mails between an elected official and a public employee in *Denver Publishing Co.*, 121 P.3d at 196; (3) private citizens' surveys e-mailed to elected officials in *Colorado Republican Party v. Benefield*, —— P.3d ——, ——, 2011 WL 5436483 (Colo.App. No. 10CA2327, Nov. 10, 2011) *cert. granted*, 2012 WL 4478961 (Colo. Sept. 24, 2012); (4) contracts between a private company and a city department of public utilities in *Freedom*

2.  Section 24–72–203(3)(a) provides:
    If the public records requested are in the custody and control of the person to whom application is made but are in active use, in storage, or otherwise not readily available at the time an applicant asks to examine them, the custodian shall forthwith notify the applicant of this fact, in writing if requested by the applicant. If requested by the applicant, the custodian shall set a date and hour at which time the records will be available for inspection.

*Newspapers,* 731 P.2d at 743; (5) bid proposal documents submitted by a subcontractor to a contractor in *IBEW,* 880 P.2d at 164; and (6) bid proposals submitted by real estate firms to a private, nonprofit corporation in *Denver Post Corp. v. Stapleton Development Corp.,* 19 P.3d 36, 39 (Colo.App.2000).

¶ 34 The cases in which divisions of this court ordered disclosure of writings created by private parties but obtained—and thus "made, kept, or maintained" as public records—by governmental entities, are distinguishable from this case. *See Stapleton Dev. Corp.,* 19 P.3d at 41 (bid proposals submitted by private real estate corporations to a private, non-profit corporation were public records subject to CORA because private, non-profit corporation was a "political subdivision" as it was incorporated by city, city retained significant control over corporation, and corporation oversaw management and disposition of publicly owned property); *Pruitt v. Rockwell,* 886 P.2d 315, 317–18 (Colo.App.1994) (holding that educational and financial aid materials that were not in the custody of the Department of Corrections were nevertheless "public records" if "another state agency might maintain or have access to the requested records").

¶ 35 While the general purpose of CORA is to provide open government through disclosure of public records, its purpose is not to disclose information beyond that kept by the government or which falls under an exception. § 24–72–201; *Wick,* 81 P.3d at 365. Furthermore, documents not subject to disclosure under CORA may still be discoverable under other legal mechanisms. *See Denver Post,* 230 P.3d at 1240 (citing Colo. Const. art. 2, § 7 (seizure of private document pursuant to a search warrant)); §§ 24–72–301 to –309, C.R.S. 2012 (Colorado Criminal Justice Records Act (CCJRA), providing for access to criminal justice records); C.R.C.P. 26(b)(1), 34(a)(1) (civil discovery); *see also Harris v. Denver Post Corp.,* 123 P.3d 1166 (Colo.2005) (records not subject to CORA were subject to disclosure pursuant to CCJRA).

¶ 36 In conclusion, communications not received, possessed, or maintained by the District, through Clifton, are not public records.

However, we agree with the trial court that the District must produce communications concerning the project sent to or received by the District, through Clifton, including those received from J3 Engineering Consultants.

## V. Violation of CORA

¶ 37 Next, plaintiffs contend the trial court erred in ruling that the District did not violate CORA. We disagree.

¶ 38 CORA creates a presumptive right of public inspection of public records. *See* §§ 24–72–201, 24–72–203(1)(a), 24–72–204(1), C.R.S. 2012. Therefore, public records are open for inspection by the public except as provided in CORA itself or otherwise specifically by law. § 24–72–203(1)(a); *Denver Publ'g Co. v. Dreyfus,* 184 Colo. 288, 293, 520 P.2d 104, 106 (1974) (*Dreyfus*); *Daniels v. City of Commerce City,* 988 P.2d 648, 650 (Colo.App.1999).

¶ 39 If requested public records are not in the custody of the person to whom application is made, that person is required to notify the applicant of this fact and must state in detail to the best of his or her knowledge and belief the reason for the absence of the records. § 24–72–203(2), C.R.S. 2012.

¶ 40 CORA provides that "[w]here public records are kept only in miniaturized or digital form, ... the official custodian shall ... [a]dopt a policy regarding the retention, archiving, and destruction of such records." § 24–72–203(1)(b)(I). This section permits the records custodian to make such rules and regulations "as are reasonably necessary for the protection of such records and the prevention of unnecessary interference with the regular discharge of the duties of the custodian or the custodian's office." § 24–72–203(1)(a); *Black,* 74 P.3d at 471.

¶ 41 In *Black,* a division of this court upheld a $15 per hour fee for research and retrieval and a $20 per hour fee for exceptionally voluminous requests as reasonable regulation under section 24–72–203(1)(a). *Id.* at 472. Relying on CORA's legislative history and intent, the division concluded that CORA "supports the court's finding that the research and retrieval fees were nominal in comparison to the time spent responding to

the volume of requests ... and did not constitute a burden contrary to the spirit of [CORA]." *Black*, at 472; *see Citizens Progressive Alliance v. Sw. Water Conservation Dist.*, 97 P.3d 308, 314 (Colo.App.2004) (upholding $20 per hour research and retrieval fee).

¶ 42 Plaintiffs argue that the District did not have a policy in place when they made their request, and, therefore, that the trial court erred in allowing the District to charge a $25 per hour fee for the time needed to retrieve and research the public records, and to require payment of a deposit before producing documents. This argument is unsupported by our case law and a plain reading of CORA.

¶ 43 Although respondent agencies in the cases cited by plaintiffs—where fees were upheld as reasonably regulating access to records—had policies in place at the time of the request, neither CORA nor prior case law mandates that such policies be promulgated before a request for records is received. *See Citizens Progressive Alliance*, 97 P.3d at 314; *Tax Data Corp. v. Hutt*, 826 P.2d 353, 355 (Colo.App.1991) (custodians of public records may dictate the manner of access to public records; city "promulgated regulations governing public access to records open to inspection or copying under state and local laws" *after* corporation requested tax information).

¶ 44 Here, the trial court weighed the cost to plaintiffs against the reasonable time for retrieving and reviewing the documents and found the $25 per hour fee to be reasonable.

¶ 45 We uphold the trial court's determination that the fee was reasonable.

¶ 46 We likewise agree with the trial court that the District could require payment of a deposit before producing the documents. As determined by the trial court, the imposition of an advance deposit was reasonable to avoid a situation where the District would need to pursue collection of any accrued fees. There was no indication that plaintiffs were unable to pay the deposit. In the absence of such a circumstance, and given the potentially massive volume of the documents requested, we conclude that charging an advance

deposit in a reasonable amount was not a violation of CORA. *Cf.* 5 U.S.C. § 552(a)(4)(A)(v) (2009) (under federal Freedom of Information Act, agency can require advance payment of a fee to produce public records if the agency determines that the fee will exceed $250).

¶ 47 Because we conclude the District was permitted to collect a deposit prior to producing the records, we reject plaintiffs' contention that the District violated CORA by failing to timely respond to the November 7, 2011, request.

## VI. Identifying and Segregating Privileged Records

¶ 48 We agree with the District's contention that the trial court erred in holding that the $25 per hour fee could not be assessed for time spent identifying and segregating privileged material.

¶ 49 CORA "contains a broad legislative declaration that all public records shall be open for inspection unless specifically excepted by law." *Black*, 74 P.3d at 467; *see* § 24–72–201; *see also Dreyfus*, 184 Colo. at 298, 520 P.2d at 109. However, section 24–72–204(3)(a)(IV), C.R.S. 2012, specifically allows a custodian to deny the right of inspection of any privileged information. *Black*, 74 P.3d at 467. This includes documents protected by an attorney-client privilege. *City of Colo. Springs v. White*, 967 P.2d 1042, 1055 (Colo.1998); *Black*, 74 P.3d at 467.

¶ 50 We conclude that a custodian may charge a reasonable fee for retrieving and researching records, including the time it takes to identify and segregate records that need not be disclosed. *See* § 24–72–203, C.R.S. 2012 (custodian of public records may create rules regarding inspection of records "as are reasonably necessary for the protection of such records"). We conclude that the $25 per hour fee is reasonable for this purpose, as well.

## VII. Creating a Privilege Log

¶ 51 Plaintiffs requested that the District generate a privilege log in the event that the records review resulted in the denial

of access to any documents. On appeal, they assert the trial court erred in ordering that any expenses associated with producing a privilege log may be charged to plaintiffs. We disagree.

¶ 52 Section 24–72–205(3), C.R.S. 2012, allows a political subdivision to charge a reasonable fee "[i]f, in response to a specific request, the ... political subdivision[ ] has performed a manipulation of data so as to generate a record in a form not used by the ... political subdivision."

¶ 53 A privilege log identifies documents not disclosed and explains the reasons for nondisclosure. *DeSantis v. Simon*, 209 P.3d 1069, 1074 (Colo.2009). The District indicates that no privilege log currently exists. Under a plain reading of the statute, then, compilation of a privilege log equates to "generat[ing] a record in a form not used by the" District. Further, the compilation of a privilege log falls within the plain meaning of "manipulation of data," because it involves managing the privileged documents. *See Webster's Third New International Dictionary* 1376 (2002) ("manipulate" defined as "to treat, work, or operate with the hands or by mechanical means" or "handle or manage"; "manipulation" defined as "the act or an instance of handling with the hands or mechanical means").

¶ 54 We recognize that the burden of proving the applicability of a privilege "rests with the claimant of the privilege," in this case the District. *Black*, 74 P.3d at 467 (citing *Clark v. Dist. Court*, 668 P.2d 3 (Colo.1983)). However, we perceive no conflict between a political subdivision's burden under common law and CORA to assert a privilege and CORA's statutory provision allowing a reasonable fee for generating a record in response to a request. *See Black*, 74 P.3d at 466, 472 (research and retrieval fee extended to requests and court orders for "retrieving or compiling" public data, and part of court order included submission of privilege logs).

¶ 55 Therefore, we perceive no error in the trial court's ruling that the District may charge an additional fee for the process of producing a privilege log. We likewise agree with the trial court that the $ 25 per hour fee was reasonable for creating the privilege log because it did not exceed the actual cost of generating the log. *See* § 24–72–205(3) ("Such fee shall not exceed the actual cost of manipulating the said data and generate the said record in accordance with the request.").

## VIII. Attorney Fees and Costs

¶ 56 Plaintiffs contend the trial court erred in denying their request for attorney fees and costs. We disagree.

¶ 57 CORA's costs and attorney fees provision does not afford the trial court discretion. The award of costs and attorney fees is mandatory "[u]nless the court finds that the denial of the right of inspection was proper" or unless a statutory provision precludes the award of such fees. *See* § 24–72–204(5), C.R.S. 2012 (providing exception as to costs and fees sought for production of discovery documents in pending litigation); § 24–72–204(6)(a), C.R.S. 2012 (providing exception as to attorney fees sought under certain circumstances).

¶ 58 A "prevailing applicant" under CORA is not to be determined in the same manner as a "prevailing party." *Compare* § 24–72–204(5) (awarding costs to "prevailing applicant"), *with* § 24–72–204(5.5)(a), C.R.S. 2012 (providing for award of attorney fees and court costs to "prevailing party" if a CORA application under that subsection is frivolous, vexatious, or groundless).

¶ 59 Remedies for wrongful withholding of documents under CORA are limited to an order to produce the documents for inspection and an award of costs and attorney fees. § 24–72–204(5); *see also People in Interest of A.A.T.*, 759 P.2d 853, 855 (Colo.App.1988) (section 24–72–204(5) and (6), C.R.S. 2012, provide exclusive procedures to resolve disputes concerning public records accessibility).

¶ 60 Here, based on our conclusion that the District did not violate CORA, we likewise conclude there was no wrongful withholding of records, and plaintiffs are not entitled to attorney fees or costs.

## IX. Conclusion

¶ 61 We reverse that part of the judgment ordering the District to bear the cost of separating privileged records, and affirm in all other respects.

JUDGE CARPARELLI and JUDGE TERRY concur.