The **DENVER PUBLISHING COMPANY,** a Colorado corporation, d/b/a Rocky Mountain News, Plaintiff–Appellee,

v.

The **UNIVERSITY OF COLORADO** and **Theodore Volsky, Jr.,** Individually, and in his Capacity as Custodian of Records, Defendants–Appellants,

and

**Glendon F. Drake,** Intervenor–Appellant.

No. 89CA1307.

Colorado Court of Appeals, Div. III.

Nov. 23, 1990.

Rehearing Denied Jan. 24, 1991.

Certiorari Denied June 17, 1991.

Baker & Hostetler, James A. Clark, Bruce D. Pringle, Todd L. Lundy, Denver, for plaintiff-appellee.

Office of University Counsel, Beverly Fulton, Sp. Asst. Atty. Gen., Denver, for defendants-appellants.

Cooper & Kelley, P.C., Paul D. Cooper, Ronald H. Nemirow, Denver, for intervenor-appellant.

Opinion by Judge NEY.

In this action under the Colorado Open Records Act, § 24–72–201, et seq., C.R.S. (1988 Repl.Vol. 10B), defendants, University of Colorado, its vice president and custodian of records, Theodore Volsky, Jr., and intervenor, Glendon Drake, appeal the judgment in favor of plaintiff, Denver Publishing Company, d/b/a Rocky Mountain News. Defendants contend the trial court erred: (1) in ordering disclosure to plaintiff of documents maintained in the university's personnel files and (2) in finding that the public interest exception to the Open Records Act did not prohibit disclosure of a settlement agreement. We affirm.

Glendon Drake was employed as chancellor of the University of Colorado at Denver. A dispute arose between Drake and the president of the university, and Drake's employment as chancellor was terminated. Drake and the university submitted their dispute to arbitration, and an agreement setting forth the rights and duties of the parties was reached. The written settlement agreement was placed in Drake's personnel file.

In an effort to learn the details of the dispute and settlement agreement, Denver Publishing, pursuant to the Open Records Act, requested the university to permit inspection and copying of the following documents:

"1. All contracts between the university and Glendon Drake;

"2. All memoranda, correspondence, or records as defined by statute regarding Glendon Drake;

"3. All university policies and guidelines regarding leave for administrators or chancellors such as Glendon Drake;

"4. All contracts between the university and its current chancellors."

Defendants notified Denver Publishing that it could inspect and copy the documents specified in paragraph 3 above but denied access to all other requested documents. Denial was based on the personnel file exception to the Open Records Act set out in § 24–72–204(3)(a)(II), C.R.S. (1988 Repl.Vol. 10B). Information regarding salaries of former Chancellor Drake and the other serving chancellors was voluntarily provided by the defendants.

Following a hearing on the matter, the trial court conducted an *in camera* review of the personnel files of Drake and the other chancellors of the university. In tendering the file for this *in camera* review, the university included *ex parte* communication to the court in which it invoked the public interest exception, § 24–72–204(6), C.R.S. (1988 Repl.Vol. 10B), to the Open Records Act.

The trial court gave all parties the opportunity to brief the public interest exception issue, considered their legal arguments, and ordered disclosure of the requested documents.

A motion to intervene was then granted to Glendon Drake. A second hearing was held, the earlier order withdrawn, and a second order issued granting access to all documents requested, excepting only a preliminary settlement statement which had been submitted by the university during the arbitration process.

I.

The defendants contend that, based on § 24–72–204(3)(a)(II), C.R.S. (1988 Repl.Vol 10B), the trial court erred in allowing Denver Publishing access to documents placed in Drake's personnel file consistent with the university's policy. We disagree.

A.

■ The Colorado Open Records Act allows access to all public records not specifically exempted by law. As stated in § 24–72–201, C.R.S. (1988 Repl.Vol. 10B):

"It is declared to be the public policy of this state that all public records shall be open for inspection by any person at reasonable times, except as provided in this part 2 or as otherwise specifically provided by law."

An exception for inspection of personnel files is contained in § 24–72–204, C.R.S. (1988 Repl.Vol. 10B):

"(3)(a) The custodian shall deny the right of inspection of the following records, unless otherwise provided by law....

. . . .

"(II) Personnel files, except applications and performance ratings...."

This court, in *Denver Post Corp. v. University of Colorado*, 739 P.2d 874 (Colo. App.1987), held that the General Assembly intended a blanket protection for all personnel files, except applications and performance ratings. However, it further found a duty on the part of the courts to ensure that documents as to which this protection is claimed actually do implicate the right of privacy and are, therefore, properly within the personnel file.

In response to *Denver Post*, the university, through a committee of faculty and staff, identified the information to be maintained in personnel files. The recommendations of this committee ultimately became part of the university's faculty handbook.

Nineteen categories of documents are designated in the faculty handbook for mandatory maintenance in the personnel file. The final category is: "Any other information the disclosure of which would compromise a legitimate expectation of privacy on the part of the individual." It is apparently this broad category that is used to justify inclusion of many documents in Drake's personnel file.

The language of this category in effect allows the custodian of records to place beyond disclosure any document which the custodian determines to carry an expectation of privacy. We conclude this unfettered delegation of authority to the custodian is contrary to the public policy as expressed in the Open Records Act.

■ The trial court in its examination of all the contents of Drake's personnel file found, with evidentiary support, that the documents either did not implicate a privacy right or contained information routinely disclosed to others. Therefore, the documents were not properly placed only in the personnel file and were not entitled to the blanket nondisclosure exception prescribed by statute. *See Denver Post Corp. v. University of Colorado, supra.* Thus, consistent with the public policy underlying the Open Records Act, such documents were properly ordered to be disclosed.

B.

■ The settlement agreement between Drake and the university and a letter agreement between another chancellor and the university are the sole documents responsive to Denver Publishing's request for "copies of all contracts between the university and its current chancellors." These documents exist exclusively in the personnel files of Drake and another chancellor.

Although the personnel file is a logical repository for an individual's contract, the placement therein does not make it inaccessible in every circumstance. The university in fact acknowledges that the requested information may be located in other files but contends that the cost of search and retrieval of the information from other files will be excessive.

Defendants assert that Drake has a legitimate expectation of privacy in these documents. However, in light of the clear intent of the Open Records Act, it is unreasonable for the defendants to have assumed they could restrict access to the terms of employment between a public institution and those it hires merely by placing such documents in a personnel file. *See Freedom Newspapers, Inc. v. Denver & Rio Grande R.R. Co.*, 731 P.2d 740 (Colo.App.1986) (public not to be denied information concerning an agency operated in its behalf).

Moreover, it has been recognized that public employees have a narrower expectation of privacy than other citizens. *Denver Post Corp. v. University of Colorado, supra.* Therefore, disclosure is proper.

### C.

■ Relying on *Denver Post,* defendants argue that §§ 24–72–204(3)(a)(II) and 24–72–204(5), C.R.S. (1988 Repl.Vol. 10B) require the applicant to bear the burden of proving that the custodian's denial of inspection was arbitrary and capricious. This language originates from § 24–72–204(5) and is applicable only to impose personal liability upon the custodian for the payment of the applicant's costs and attorney fees. We conclude that the applicant has no such burden to gain access to public records.

### II.

■ Defendants assert that, based on § 24–72–204(6), C.R.S. (1988 Repl.Vol. 10B), the trial court erred in allowing Denver Publishing access to the requested material because disclosure would do substantial injury to the public interest. Again, we disagree.

Even documents which do not fall within an exception to disclosure set out in § 24–72–204(3) may, nevertheless, be withheld under § 24–72–204(6), C.R.S. (1988 Repl.Vol. 10B). That section provides:

> "If, in the opinion of the official custodian of any public record, disclosure of the contents of said record would do substantial injury to the public interest ... he may apply to the district court of the district in which such record is located for an order permitting him to restrict such disclosure.... After hearing, the court may issue such an order upon a finding that disclosure would cause substantial injury to the public interest. In such action the burden of proof shall be upon the custodian."

Thus, the university, as custodian, must establish that the public interest will be substantially injured if disclosure is allowed.

Drake, the university, and the arbitration group agreed that information concerning the settlement process would remain confidential, but such agreements alone are insufficient to transform a public record into a private one.

The university argues that disclosure, contrary to the expectation of parties, of the terms of the settlement of a controversy may chill its future ability to resolve internal matters of dispute, thus effectuating a substantial injury to the public interest. While such an effect is possible, the public's right to know how public funds are expended is paramount considering the public policy of the Open Records Act. Section 24–72–201, C.R.S. (1988 Repl.Vol. 10B).

Finding that the public interest does not prevent disclosure, the trial court appropriately considered how disclosure might be granted so as to least intrude upon the individual's right to privacy. A preliminary settlement statement submitted by the university during the arbitration process and characterized by the trial court as lacking indicia of reliability was withheld. Release of information was thereby properly limited to the final terms of the settlement agreed upon by the parties.

### III.

Denver Publishing is correct in its contention that the public interest exception was not properly raised. Section 24–72–204(6), C.R.S. (1988 Repl.Vol. 10B) requires an application to the district court for an order to permit restriction of disclosure, a hearing on such application, and

> "[t]he person seeking permission to examine the record shall have notice of said hearing served upon him in the manner provided for service of process by the Colorado rules of civil procedure and shall have the right to appear and be heard."

Such procedure was not followed here; however, because the trial court considered arguments from both parties on this issue in reaching its decision, we will not order further proceedings.

## IV.

Drake contends that the trial court erred in interpreting the Colorado legislation by standards applied to the Federal Freedom of Information Act. However, since disclosure here is appropriate without recourse to federal law, any error committed by the trial court in relying on federal law is without significance.

The judgment is affirmed.

PLANK and RULAND, JJ., concur.