QUESTION PRESENTED AND CONCLUSION
Whether under Colorado's Public Records Act,student evaluations of faculty members are publicrecords that must be made available to students and other members of the general public who ask for them.
Generally, yes. Student evaluations are public records, which the Public Records Act makes generally subject to disclosure. Some portions of faculty evaluations fall within a "personnel files" exception to the Act's mandated disclosure, because they are intimate, sensitive and personal.
ANALYSIS
Although this precise question has never been litigated, the Colorado Public Records Act §§ 24-72-201 to -206, C.R.S., and interpretive case law establish certain principles that govern the analysis. The law favors disclosure. All public records must be made available for inspection unless specifically exempted by law, or upon a judicial determination that disclosure would substantially injure the public interest. Personnel files of public employees are excepted from mandatory disclosure. However, "personnel files" has been interpreted to encompass only records that are intimate, personal and sensitive, and not regularly disclosed to others. "Personnel" files does not include "performance ratings."
As set forth below, these principles lead to the conclusion that student evaluations of faculty members are public records that generally must be open for inspection under the Act.
It is necessary to begin the analysis by examining certain facts and defining certain terms. Section VIII.B.2. of the Trustees of the State Colleges in Colorado Handbook forProfessional Personnel ("Handbook") directs the colleges to establish performance evaluation systems "which provide opportunity to faculty members to be evaluated by peers, students and supervisors. . . ." However, because theHandbook does not prescribe evaluation methodologies or procedures, MSCD's Trustee-approved performance evaluation system incorporates its own procedures for student evaluation of faculty members' teaching:
 All faculty evaluations shall include evaluation by students. The evaluation instrument or instruments approved by the faculty senate, the academic deans and the Vice President for Academic Affairs shall be administered in the prescribed manner to classes or probationary, temporary and part-time faculty before the end of both the fall and spring semesters or modules. Tenured faculty members must be evaluated by students in at least three courses taught during the evaluation period.
* * * *
 Student evaluations should not be the principal method of evaluating the teaching effectiveness of a faculty member.
Handbook for Professional Personnel (("MSCDHandbook") § III.A.2.c(1) at III-3 (Footnote omitted).
In practice, student evaluation instruments consist of two parts: (1) standardized questions asking students to rate specific aspects of a faculty member's teaching on a quantitative scale; and (2) a space in which students are encouraged to critique the class. To encourage candor, students are instructed not to sign the instruments or otherwise identify themselves. The College's Office of Institutional Research collates the student's answers and prepares a statistical summary including, among other things, a mean and/or median quantitative rating on each standardized question asked by the instrument, as well as a class and cumulative rating based on those responses. The written critiques are not summarized. As provided in the MSCDHandbook, the department chair uses the student evaluations as one basis for evaluating faculty members. Faculty members also receive copies of the statistical summaries and, after the students have been graded, the individual evaluation instruments. The original instruments are delivered to faculty members to keep or dispose of as they choose; only the statistical summaries are kept on file by the College.
"Student evaluations" can therefore mean either or both of two different records: (1) individual evaluation instruments including class critiques and quantitative answers to standardized questions and/or (2) statistical summaries that profile faculty members' class and cumulative rankings for standardized questions asked by the instrument. This opinion refers to these two records as "individual evaluation instruments" and statistical summaries" respectively and uses "student evaluations" to mean either or both records. The different components of individual evaluation instruments are referred to as "class critiques" and "quantitative responses."
The analysis now turns to the law concerning public records. The Colorado Public Records Act is codified at title 24, article 72, part 2 of the Colorado Revised Statutes (1988 Supp. 1995). The legislative declaration prefacing the Act states "It is declared to the public policy of this state that all public records shall be open for inspection by any person at reasonable times, except as provided in [the Act] or as otherwise specifically provided by law." § 24-72-201, C.R.S. (1988). Accordingly, the Act provides that all public records shall be open for inspection unless specifically prohibited by the Act, another state statute, a federal statute, a federal regulation having the force and effect of law, a rule promulgated by the Colorado Supreme Court or a court order. §§ 24-72-203(1) 
204(1).
"Public records" are "all writings, made, maintained, or kept by the state or any agency, institution, or political subdivision thereof for use in the exercise of functions required or authorized by law or administrative rule or involving the receipt or expenditure of public funds." § 24-72-202(4). "Institutions" include state institutions of higher education. § 24-72-202(1.5). Plainly, both the evaluation instruments and statistical summaries are "public records" within the meaning of the Act.
It appears that no other state or federal statute, federal regulation, state supreme court rule or court order prohibits the disclosure of student evaluations.[1] The pertinent inquiry, then, is whether the Act itself prohibits disclosure of the evaluation.
The act prohibits the inspection of "personnel files" by anyone other than "persons in interest" (i.e., the subjects of the files or their designated representative) and their supervisors § 24-72-204(3)(a)(II). However, the Act excludes "performance ratings" from the meaning of "personnel files:"
 "Personnel files" does not include applications of past and current employees, employment agreements, any amount paid or benefit provided incident to termination of employment, performance ratings, or any compensation, including expense allowances and benefits paid to employees by the state, its agencies, institutions, or political subdivisions.
See § 24-72-202(4.5), C.R.S. (Supp. 1995) (emphasis added). Hence, unlike personnel files, employees' "performance ratings" must be made available for public inspection.
The Act does not define "performance ratings," nor has the expression been construed by the courts. There are competing arguments concerning whether student evaluations of faculty are performance ratings. One asserts they are not, because performance rating refers only to annual performance evaluations, not to the "raw data" on which the evaluations are based. But that argument is countered if the raw data themselves are evaluations of performance. In other words, each individual evaluation instrument is a student's rating of a faculty member's performance. This view, however, also invites counter-argument: "Performance rating" implies an assessment that is more comprehensive, systematic and deliberate than that provided by the spontaneous responses of individual students. Although individual evaluations instruments fit within the dictionary definitions of "performance" and "rating," they do not provide the degree of process or regularity suggested by the phrase "performance rating".
The last argument is more persuasive. In excepting "performance rating" from the confidentiality that covers their personnel file, it is unlikely that the General Assembly contemplated tens or hundreds of subjective, possibly inconsistent, opinions based on less than comprehensive information. A broader term than "performance rating" would have been employed to designate every document reflecting opinions about employees' execution of their duties.
Assuming that at least some types of student evaluations are not performance ratings under the Act, they are still public records that must be made available for inspection unless an exception to the Act shields them from disclosure. The only exception that arguably applies to student evaluations is that governing "personnel files."
 The Act defines personnel files as follows: "Personnel files" means and includes home addresses, telephone numbers, financial information, and other (information maintained because of the employer-employee relationship,) and other documents specifically exempt from disclosure under this [Act] or any other provision of law.
§ 24-72-202(4.5) Though the definition appears to be broadly inclusive — "information maintained because of the employer-employee relationship" — courts have interpreted "personnel files" as limited to information that is intimate, sensitive and personal. Denver Publishing Co. v. Universityof Colorado, 812 P.2d 682 (Colo.App. 1991); DenverPost Corp. v. University of Colorado, 739 P.2d 874
(Colo.App. 1987). The two cited cases provide the most thorough interpretation available of the "personnel files" exception to the Public Records Act.
In Denver Post, the newspaper asked to inspect the records of an internal University of Colorado investigation into allegations that certain Health Sciences Center employees had received unauthorized payments from the Saudi Arabian government. In opposing the request, the University argued that the records were exempt from disclosure because they were part of the employees' protected personnel files.
The court of appeals adopted a two-pronged test for determining whether a particular record can be shielded from disclosure under the Act's personnel files exception. First, it must "actually [be] present in an employee's personnel file."739 P.2d 874, 878. Second, the contents of the record must implicate privacy interests that the personnel files exception was intended to protect.[2] Id. The court noted that while employees have at least minimal privacy interest in their job performance evaluations, "public employees have a narrower right and expectation of privacy than other citizens."Id. at 879. The strength of privacy interests is ranked on a "`descending order of sensitivity and constitutional interest,'" id. (quoting Martinelli v. DistrictCourt, 612 P.2d 1083 (Colo. 1980)), which gives the greatest weight to intimate, personal, or sensitive information.[3] In the court's opinion, "information concerning payments individuals received from the Saudi government, how those payments were reported, the tax treatment of those payments, and the results of an internal investigation into the propriety of these activities," was not "so intimate, personal or sensitive as to rank near the top of [the descending] order." Id.
The Court of Appeals revisited the Act's personnel files exception four years later in Denver Publishing Co. v.University of Colorado. In that case, the Rocky Mountain News sought access to all contracts, memoranda, correspondence and other records in the personnel file of a former University of Colorado at Denver chancellor. The court characterized its earlier decision in the Denver Post case as "[finding] a duty on the part of courts to ensure that the documents as to which [personnel file] protection is claimed actually do implicate the right of privacy and are, therefore, properly within the personnel file." 812 P.2d 682, 684. The court upheld a trial ruling that found the materials in dispute were not properly part of the personnel file.[4]
These cases make clear that only intimate, personal and sensitive information can "properly" be placed in employees' personnel files and so shielded from disclosure to the public.
The quantitative responses in student evaluations do not appear to be so intimate, personal and sensitive that they merit protection under the personnel files exception. While the disclosure of unflattering evaluations may be embarrassing, it is certainly no more so than the disclosure of information about the receipt of unauthorized payments from a foreign government.See Denver Post, supra. Taking into account public employees' narrow expectation of privacy in performance evaluations and the comparatively bland questions asked in the evaluation instruments, it is implausible to suppose that the data disclosed by student evaluations ranks highly on any descending order of sensitivity and constitutional interest.
The narrative class critiques present different considerations, however, and more clearly implicate privacy interests. Unlike the standardized inquiries seeking quantitative responses, the critiques solicit candid personal comment about the course and the professor. Such comments may reflect the faculty member's relationship with students, and his or her personality, beliefs, or biases. Further, comments in the critiques are likely to be derived from the student's interactions with the professor and may be highly sensitive or personal. Also, harsh, scurrilous or false commentary can be far more intimately and personally damaging than quantitative responses. This kind of information more closely corresponds to the "intimate, personal and sensitive" standard of DenverPost and Denver Publishing. It is properly within the definition of "personnel file."
In sum, quantitative responses in individual evaluation instruments and statistical summaries do not qualify as confidential "personnel files" that the College is entitled to withhold from the public under section 24-72-204(3)(a)(II). However, because of their potentially more intimate, sensitive and personal content, the class critiques may be placed in the personnel file.
CONCLUSION
Student evaluations are public records under the Public Records Act. They include numerical responses, statistical summaries of those responses, and narrative class critiques. The numerical responses and statistical summaries are not exempt from disclosure as part of the personnel file, because they do not contain information that is intimate, sensitive, and personal. The narrative class critiques, however, regularly do contain such information, and are appropriately placed in the personnel file.
 GALE A. NORTON Attorney General
EDUCATION, HIGHER EMPLOYMENT PUBLIC INFORMATION
Section 24-72-201 et seq. 20 USCA 1223g et seq.
HIGHER EDUCATION, DEPT. State Colleges in Colorado Metropolitan State College
Student evaluations of faculty are public records, which the Public Record Act makes subject to disclosure. Some portions of evaluations fall within "personnel files" exception to the Act's mandated disclosure because they are intimate, sensitive and personal.
[1] The Family Educational Right to Privacy Act, 20 U.S.C.A. 1223g et. seq. prohibits the release of personally identifiable information from student education records. There is an argument that the narrative class critiques fall with in the prohibition because they (1), are records reflecting a student's educational experience, and (2), might be personally identified, either by handwriting or mode of expression. These contentions do not seem persuasive because the record pertains primarily to the faculty member, not the student, and attempted personal identification would be imprecise and speculative.
[2] The analysis in Denver Post did not focus primarily on the proper scope of "personnel files," since the records at issue in that case were not kept in the personnel file. Id. at 878. The analysis instead examined whether the public interest in respecting the privacy of public employees should shield the records from disclosure. However, the court clearly held that only records which truly implicate privacy interests are properly part of the personnel file.Id. Therefore, the court's subsequent analysis of the privacy interests of public employees bears directly on the permissible scope of personnel files.
[3] Martinelli held that the Fourteenth Amendment to the United States Constitution incorporates a "right to confidentiality" encompassing the "`power to control what we shall reveal about our intimate selves, to whom and for what purpose.' [Citation omitted]." 612 P.2d 1083, 1091. An individual who invokes this right to prevent governmental disclosure of personal information must prove both that he/she had a legitimate, subjective expectation that the information would not be disclosed, and more important, that the subjective expectation of non-disclosure is objectively reasonable — i.e., that the information is so "`highly personal and sensitive' . . . that its disclosure would be offensive to a reasonable person of ordinary sensibilities." Id.
Whether a subjective expectation of non-disclosure is objectively reasonable depends on the information's place in a "`descending order of sensitivity and constitutional interest'" which the court described as follows:
 At the top of this ranging are those materials and information which reflect the "intimate relationships" of the claimant with other persons. [Citation omitted.] Below this ranking: "the progressively lower tiers would include . . . [the claimant's] beliefs and self-insights; his personal habits; routine autobiographical materials, his name, address, marital status, and present employment, which together may constitute his irreducible identify to anyone who has reason to acknowledge his existence." [Citation omitted.] Depending, of course, on the circumstances of the individual case, it is less likely that information or materials in the lower tiers of this ranking will come within the zone of protection of the right of confidentiality.
Id. at 1092 (emphasis added).
[4] The court also addressed the possibility that custodians would attempt to shelter records improperly by putting them in the personnel file: "[T]his unfettered delegation of authority to the custodian [to decide which records are private] is contrary to the public policy as expressed in the Open Records Act." Id. The court further ruled that "information routinely disclosed to others" does not implicate strong enough privacy interest to warrant placing it in personnel files.Id.