2016 COA 10

JEFFERSON COUNTY EDUCATION
ASSOCIATION, Plaintiff–
Appellant,

v.

JEFFERSON COUNTY SCHOOL DIS-
TRICT R–1 and Lisa Pinto, in her offi-
cial capacity as Custodian of Records,
Defendants–Appellees.

Court of Appeals No. 15CA1066

Colorado Court of Appeals,
Div. A.

Announced January 14, 2016

Sharyn E. Dreyer, Kris A. Gomez, Denver, Colorado, for Plaintiff–Appellant.

Caplan and Earnest LLC, William J. Kowalski, W. Stuart Stuller, Boulder, Colorado, for Defendants–Appellees.

Levine Sullivan Koch & Schulz, L.L.P., Thomas B. Kelly, Steven D. Zansberg, Christopher P. Beall, Denver, Colorado, for Amicus Curiae Associated Press, Colorado Press Association, Colorado Broadcasters Association, Colorado Freedom of Information Coalition and the Denver Post.

Opinion by JUDGE BERNARD

¶ 1 Is a written record that shows the name of a teacher who requested sick leave on a specific date part of the teacher's personnel file for purposes of the Colorado Open Records Act, sections 24–72–200.1 to –206, C.R.S.2015? This statutory scheme, which we commonly refer to as CORA, requires the custodian of a personnel file to preserve the confidentiality of its contents. But, if the record is not part of a teacher's personnel file, and no other statute protects it from

disclosure, then CORA requires the custodian to disclose the record upon request.

¶2 The plaintiff, a teacher's union—the Jefferson County Education Association—filed a motion under C.R.C.P. 106(a)(2) to enjoin the defendants, a school district—Jefferson County School District No. R–1—and its records custodian—Lisa Pinto—from releasing these kinds of records to a Jefferson County resident. The trial court denied the motion.

¶3 We conclude that a record that documents a teacher's request for sick leave is not part of the teacher's personnel file. CORA requires the custodian of such a record to disclose it upon request. We therefore affirm the trial court's order.

## I. Background

¶4 Some residents in Jefferson County alleged that, in September 2014, teachers at four high schools in the Jefferson County School District participated in "sick outs" to protest specific proposals that the school board had discussed. In each instance, whatever the reason for the teachers' absences, the affected high school closed for the day.

¶5 In February 2015, a Jefferson County resident asked for "all records showing the names of teachers who reported in sick at" each high school on the relevant dates. She made the request under CORA.

¶6 The school district and the records custodian decided that they would release the records to the resident. The teachers' union did not want them to do so, so it filed a motion in the trial court under C.R.C.P. 106(a)(2). The motion asked the court to compel the school district and the custodian to deny the resident's CORA request.

¶7 During a hearing on the motion, the school district stated that there were four documents, or one for each high school, that were "responsive to [the resident's] request." Each document bore (1) a particular school's name; and (2) a list of the last names and the initials of the first names of "staff members" from the school who had taken sick leave on the "dates specified" in the resident's CORA request. (The teachers' union is the only

group opposing the decision of the school district and the custodian to release the records; no other staff members have made a similar request. Our opinion therefore focuses only on the contentions made by the teachers' union on behalf of teachers.)

¶8 The trial court denied the motion, but it granted a short stay of its judgment pending appeal. We extended the stay, and we expedited the appeal.

## II. Analysis

¶9 The teachers' union asked the trial court for relief in the nature of mandamus. It contended that CORA imposed a duty on the school district and the records custodian to deny the resident's request for the records because they were part of the teachers' personnel files. See § 24–72–204(3)(a)(II), C.R.S.2015. We disagree.

### A. Legal Principles

¶10 Mandamus is an extraordinary remedy that a court may use to compel performance of a duty that the law requires. See State v. Bd. of Cty. Comm'rs, 897 P.2d 788, 791 (Colo.1995); Denver Classroom Teachers Ass'n v. City & Cty. of Denver Sch. Dist. No. 1, 2015 COA 71, ¶18, —— P.3d ——. A court will grant a request for mandamus only if (1) the plaintiff has a clear right to the relief sought; (2) the defendant has a clear duty to perform the act requested; and (3) there is no other available remedy. Bd. of Cty. Comm'rs v. Cty. Rd. Users Ass'n, 11 P.3d 432, 437 (Colo.2000).

¶11 The focus of the dispute in this case is on the second factor: Do the school district and the records custodian have a "clear duty" to do what the teachers' union wants, which is to deny the resident's request for the records? We conclude that they do not have such a duty. Instead, CORA requires them to disclose the records.

¶12 We reach this conclusion by interpreting subsection (4.5) in section 24–72–202, C.R.S.2015, of CORA. Subsection (4.5) defines the phrase "personnel files" this way:

"Personnel files" means and includes home addresses, telephone numbers, financial in-

formation, and other information maintained because of the employer-employee relationship.... "Personnel files" does not include applications of past or current employees, employment agreements, any amount paid or benefit provided incident to termination of employment, performance ratings, final sabbatical reports ... or any compensation, including expense allowances and benefits, paid to employees by the state, its agencies, institutions, or political subdivisions.

¶ 13 Statutory interpretation is a question of law that we review de novo. *Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.,* 109 P.3d 604, 608 (Colo.2005); *Gleason v. Judicial Watch, Inc.,* 2012 COA 76, ¶ 14, 292 P.3d 1044.

■ ¶ 14 We begin our analysis by recognizing a general rule. Section 24–72–203(1)(a), C.R.S.2015, states that "[a]ll public records shall be open for inspection by any person at reasonable times, except as provided in this part 2 or as otherwise provided by law...." In other words, CORA "allows access to all public records not specifically exempted by law." *Denver Pub. Co. v. Univ. of Colo.,* 812 P.2d 682, 683 (Colo.App.1990). CORA's clear language creates a strong presumption in favor of disclosing records. *Int'l Bhd. of Elec. Workers Local 68 v. Denver Metro. Major League Baseball Stadium Dist.,* 880 P.2d 160, 165, 167 (Colo.App.1994). This strong presumption requires us to construe any exceptions to CORA's disclosure requirements narrowly. *City of Westminster v. Dogan Constr. Co.,* 930 P.2d 585, 592 (Colo.1997).

■ ¶ 15 The contents of personnel files are one of the exceptions to the general rule that the public has access to governmental records. *See Denver Pub. Co.,* 812 P.2d at 683. CORA makes clear that the custodian of personnel files *must* deny public access to the contents of personnel files. § 24–72–204(3)(a)(II).

### B. The Requested Records Are Not Included in the Definition of "Personnel Files"

¶ 16 Subsection (4.5) consists of two sentences. The first sentence defines what the contents of personnel files *are*; the second sentence states that certain specified things *are not* included in personnel files. The records at issue in this case—the four lists of teachers who called in sick on specified days—are not expressly mentioned in the first sentence of subsection (4.5). So we must interpret that sentence to figure out whether they fall within its coverage.

■ ¶ 17 To accomplish this interpretive task, we apply a canon of statutory construction called *ejusdem generis.* We apply this canon because the first sentence of subsection (4.5) contains a list of specific things— "home addresses, telephone numbers, financial information"—that is followed by a broader general term—"other information maintained because of the employer-employee relationship." *See Winter v. People,* 126 P.3d 192, 195 (Colo.2006). In such circumstances, the canon of *ejusdem generis* indicates that "the general terms are applied only to those things of the same general kind or class as those specifically mentioned." *Id.*

¶ 18 The canon is based on two rationales. First, "[w]hen the initial terms all belong to an obvious and readily identifiable genus, one presumes" that the statute's drafters "ha[d] that category in mind for the entire passage." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 199 (2012). Second, "when the tagalong general term is given its broadest application, it renders the prior enumeration superfluous." *Id.* at 199–200.

¶ 19 Turning to this case, we see that the first sentence of subsection (4.5) satisfies both rationales that support the canon. First, the initial terms—"home addresses, telephone numbers, [and] financial information"—belong to a readily identifiable genus: personal demographic information. Second, if we were to give the tagalong general term—"other information maintained because of the employer-employee relationship"—its broadest application, it would render the enumeration of the specifics superfluous. At its broadest, the general term would incorporate literally *every* bit of specific information that the school district maintained as the teacher's employer,

which would include "home addresses, telephone numbers, [and] financial information."

¶ 20 So, when we apply the canon of *ejusdem generis* to the first sentence, it means that the general term of "other information maintained because of the employer-employee relationship" only applies to those things which are of the same general kind or class as personal demographic information.

¶ 21 We are not the first division to reach this conclusion using the canon of *ejusdem generis*. *Daniels v. City of Commerce City*, 988 P.2d 648 (Colo.App.1999), also addressed the general term in the first sentence. The division held that

> "[m]aintained because of the employer-employee relationship" is a general phrase following a list of specific types of personal information. "If general words follow the enumeration of particular classes of things, the rule of *ejusdem generis* provides that the general words will be construed as applicable only to things of the same general nature as the enumerated things." Thus, we construe the phrase at issue to mean that the information must be of the same general nature as an employee's home address and telephone number or personal financial information. The information at issue does not meet that criterion; it is not the type of personal, demographic information listed in the statute.

*Id.* at 651 (quoting *Bd. of Cty. Comm'rs v. Martin*, 856 P.2d 62, 66 (Colo.App.1993)).

¶ 22 We are obviously persuaded by *Daniels'* holding, so we will follow it.

¶ 23 Turning to the records in this case, we must therefore decide whether they are of the "same general nature"—personal demographic information—as the teacher's home address, telephone number, or financial information. We conclude that the records in this case are not of the same general nature because a teacher's absence is directly related to the teacher's job as a public employee. The fact of a teacher's absence from the workplace is neither personal nor demographic; it is conspicuous to coworkers, to students, and to parents. The basic reason given for the absence—the teacher is sick—is often equally conspicuous.

¶ 24 (We have also looked to law in other jurisdictions for guidance. The language of statutes in other states is often significantly different from the language of CORA. But our research indicates that other jurisdictions have uniformly reached the same conclusion that we do in this case: sick leave records that do not otherwise contain information that should be kept confidential, such as descriptions of specific medical conditions, are not protected from disclosure. *See, e.g., Dobronski v. FCC*, 17 F.3d 275, 279 (9th Cir.1994)(the Freedom of Information Act required the disclosure of sick leave records); *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42, 48 (Iowa 1999)(statute did not bar the disclosure of sick leave records).)

¶ 25 As mentioned, we recognize the strong general rule that public records should be disclosed. *See Int'l Bhd. of Elec. Workers Local 68*, 880 P.2d at 165. We also recognize that, in light of this strong rule, we must construe any exceptions to it narrowly. *See City of Westminster*, 930 P.2d at 592. So we further conclude that

- the records in this case are not included in the first sentence of subsection (4.5);

- because they do not fall within the first sentence, they are not part of the teachers' personnel files that a records' custodian must keep confidential under section 24–72–204(3)(a)(II); and,

- because there is no specific exemption that bars their disclosure, CORA requires the school district and the custodian to release the records to the resident, *see Denver Pub. Co.*, 812 P.2d at 683.

¶ 26 These conclusions mean to us that we do not *have* to interpret the scope of subsection (4.5)'s second sentence, which lists specific items that are not included in personnel files. But the teachers' union's contention and the school district's response to it incorporate the second sentence into a two-pronged analysis. The teachers' union asserts that the first sentence exempts the records from disclosure and that the second sentence does not apply to the records because they do not specifically describe "any compensation ... paid to employees." In other words, the records do not pertain to

benefits because they do not list a teacher's accrued benefits or memorialize that the teacher received compensation.

¶ 27 The school district and the custodian reply that, even *if* the first sentence presumptively exempts the records from disclosure, the second sentence firmly rebuts this presumption because the records pertain to benefits, and the second sentence requires that such records be disclosed by stating that they do not belong in personnel files.

¶ 28 Assuming, for the purposes of argument, that we need to resolve this disagreement to fully decide the issue before us, we conclude that the record supports the position of the school district and the custodian. The records in this case are a tangible part of the chain of events that leads to the adjustment of accrued benefits and payment of sick leave, an expenditure of public funds.

¶ 29 We know that the records are part of that chain because of evidence that was presented to the trial court during the hearing.

¶ 30 First, the employment agreement between the teachers' union and the school district stated that "[t]he [d]istrict will grant sick leave to all teachers for personal illness or serious illness in the immediate family...."

¶ 31 Second, although there was testimony that teachers would not get paid if they had abused sick time or if they had run out of accrued sick leave, it is clear to us that there was a presumption that teachers who called in sick would be paid the benefit of sick leave. A representative of the teacher's union was asked, "When you call in sick for a day, you will get paid for that day[?]" She replied, "Correct." When the representative was asked, "If [teachers] had the sick leave coming to them, and they called in, it's your understanding they would be paid?" She answered, "Yes." It was also her understanding that teachers could go into the hole on sick leave "up to 40 hours" and still get paid "because the [d]istrict doesn't give them all their sick days up front at the beginning of the school year."

¶ 32 Based on these facts in the record, we conclude that the records in this case pertain to "any compensation ... including [the] benefit[ ]" of sick leave, so they fall under the second sentence of section 24–72–202(4.5). The school district and the custodian were therefore obligated to release them. *See* § 24–72–202(6)(a)(I) (writings "involving the ... expenditure of public funds" are public records).

¶ 33 The teachers' union disagrees with the result that the trial court reached for two additional reasons.

¶ 34 First, it contends that *Ornelas v. Department of Institutions, Division of Youth Services,* 804 P.2d 235, 238 (Colo.App.1990), supports its position. We disagree.

¶ 35 In *Ornelas,* a state agency challenged an award of attorney fees to an employee who sought access to his sick leave records. The division noted that the employee was not required to file a formal request for these records "because [the employee] was entitled to access his own personnel files pursuant to" CORA. *Id.*

¶ 36 But the question of whether sick leave records *should* be included in a personnel file for the purposes of CORA was not before the division in *Ornelas.* We view the division's statement as dicta because it was not essential to the holding of the case. *See People v. Vigil,* 127 P.3d 916, 934 (Colo.2006). *Ornelas* therefore does not alter our analysis.

¶ 37 Second, we also decline the teachers' union's invitation to consider whether other sorts of information besides the information we consider in this appeal are part of the teachers' personnel files. This contention, which suggests that a "parade of horribles" will occur if we conclude that the records in this case must be disclosed, involves abstract propositions that are not directly before us. We therefore will not consider them. *See Robertson v. Westminster Mall Co.,* 43 P.3d 622, 628 (Colo.App.2001)(courts may not render advisory opinions).

¶ 38 It is our job to apply the statute as the legislature wrote it, not as the teacher's union contends the legislature should have written it. *City of Fort Morgan v. E. Colo. Pub. Co.,* 240 P.3d 481, 487–88 (Colo.App.2010)(rejecting a "parade of horribles" argument that the court's resolution of

the issue would lead to a "virtual gutting of CORA").

### C. Expectation of Privacy

¶ 39 The teachers' union contends that the trial court erred because it concluded that the teachers did not have a legitimate expectation of privacy in the sick leave records. We disagree.

¶ 40 The teachers' union primarily relies on *Denver Post Corp. v. University of Colorado,* 739 P.2d 874, 878 (Colo.App.1987), as the basis for this contention. The division in that case faced the question of what documents belonged in personnel files for the purposes of CORA. (We note that CORA was different in 1987. For example, as is pertinent here, the version of CORA that was then in existence stated that the contents of personnel files could not be disclosed. § 24–72–204(3)(a)(II), C.R.S. (1988 Repl. Vol. 10B). But it would be five years before the legislature defined "personnel files" by enacting subsection (4.5). Ch. 168, sec. 2, § 24–72–202(4.5), 1992 Colo. Sess. Laws 1103–04.)

¶ 41 To answer the question, the division turned to CORA's legislative history. It discovered "a concern for protecting the individual's constitutionally based right to privacy while providing for access to public records." *Denver Post,* 739 P.2d at 878. The division identified this concern as "the basis [for] the statutory exception [to CORA's disclosure requirements] for personnel files." *Id.* The division also concluded that the legislature had established "a blanket protection [from disclosure] for all personnel files." *Id.*

¶ 42 But the division placed a restriction on the categorical protection of the contents of personnel files that implicated an employee's right to privacy: the protection only applied to "documents which actually [were] present in an employee's personnel file." *Id.* This restriction clearly referred to the record-keeping world of paper files containing paper documents that existed in 1987 and that is swiftly disappearing in our computerized age.

¶ 43 The division recognized the risk that employers or employees might try to frustrate legitimate requests to obtain information by placing documents in personnel files even if the contents of the documents did not touch on an employee's privacy rights. To avoid these sorts of end runs around the presumption of disclosure, the division emphasized that, *because* "the protection for personnel files is based on a concern for the individual's right of privacy, ... it remains the duty of the courts to ensure that documents as to which this protection is claimed actually do in fact implicate this right." *Id.*

¶ 44 Subsequent cases applied the reasoning in *Denver Post.*

¶ 45 *Denver Pub. Co.,* 812 P.2d at 684, held that certain documents that had been placed in a personnel file "either did not implicate a privacy right or contained information routinely disclosed to others." These documents therefore did not belong in the personnel file, and they "were not entitled to the blanket nondisclosure exception prescribed by the statute." *Id.*

¶ 46 According to the division in *Freedom Newspapers, Inc. v. Tollefson,* 961 P.2d 1150, 1155 (Colo.App.1998), the prohibition of disclosure of personnel files did not "exempt from disclosure an employee's name *simply because* it [was] an item of information contained in a personnel file." (Emphasis added.)

¶ 47 And *Daniels,* 988 P.2d at 651, concluded that "[a] public entity may not restrict access to information by merely placing a record in a personnel file; a legitimate expectation of privacy must exist."

¶ 48 We have concluded above that the sick leave records in this case are not part of the teachers' personnel files. We therefore think that the issue of whether the records implicate the teachers' privacy interests has become a red herring. If documents are not part of the teachers' personnel files, then the question of whether they implicate a legitimate expectation of privacy becomes a component of a *different* analysis, which is whether disclosing them would do substantial injury to the public interest. *See* § 24–72–204(6)(a); *Denver Post,* 739 P.2d at 878–79. But the teachers' union has put all of its eggs in the basket of its contention that the records were part of the teachers' personnel

**842**

files. We therefore will not address the issue whether the disclosure of the records would substantially injure the public interest. *See, e.g., Antolovich v. Brown Grp. Retail, Inc.,* 183 P.3d 582, 599 (Colo.App.2007)(court of appeals will not address contentions that were not raised in the opening brief).

¶ 49 But, what if we assume that the privacy analysis that the division followed in *Denver Post* should be used as part of the process of deciding whether the records in this case were part of the teachers' personnel files? We would nonetheless conclude that the records did not implicate the teachers' privacy interests. We begin the analysis by recognizing that "public employees have a narrower right and expectation of privacy than other citizens." *Denver Post,* 739 P.2d at 879.

¶ 50 Then, applying *Denver Post, Denver Pub. Co., Freedom Newspapers,* and *Daniels,* we conclude that the teachers did not have a legitimate expectation of privacy in the sick leave records in this case. As we observed above, a teacher's absence is conspicuous, and the reason for the absence is often equally conspicuous. And, as a public employee, a teacher should expect that basic information about his or her work attendance would be open to public inspection. The sick leave records in this case therefore "either did not implicate a privacy right or contained information routinely disclosed to others." *See Denver Pub. Co.,* 812 P.2d at 684.

¶ 51 Cases from other jurisdictions reach a similar result. *See, e.g., Perkins v. Freedom of Info. Comm'n,* 228 Conn. 158, 635 A.2d 783, 792 (1993)(The court held that the disclosure of sick leave records was not an invasion of a public employee's diminished expectation of personal privacy "especially in regard to the dates and times required to perform public duties."); *State ex rel. Jones v. Myers,* 581 N.E.2d 629, 631 (Ohio Ct.Com. Pl.1991)("[W]hile the privacy of a sick employee may suffer from disclosure, the invasion is only slight when compared to the public interest in preventing the abuse of . . . sick leave in the public arena.").

¶ 52 The teachers' union submits that there is a school district policy—"GBJ"—that creates a legitimate expectation of privacy

for CORA's purposes because it allegedly promises that the sorts of records that we consider in this appeal will be treated as confidential. But that promise does not give rise to a legitimate expectation of privacy on the part of the teachers because "unfettered delegation of authority to the custodian" to determine whether "records belong in personnel files" is contrary to CORA's expressed policy. *Denver Pub. Co.,* 812 P.2d at 684; *see also Daniels,* 988 P.2d at 651.

### D. Compelled Self–Disclosure of Medical Information

¶ 53 The teachers' union also asserts that the sick leave records should not be disclosed because, if they are to be disclosed, the teachers would be on the horns of a dilemma. If the teachers do not provide any further explanation of the records after the school district and the custodian release them, then the public may decide that they had participated in the "sick out." To allay any such concerns, some teachers may choose to disclose sensitive medical information to show that they had a legitimate medical reason to miss work. We disagree for two reasons.

¶ 54 First, we cannot ignore a plain statutory requirement. *State Farm Mut. Auto. Ins. Co. v. Graham,* 860 P.2d 566, 568 (Colo. App.1993)(An appellate court "must give full force and effect to a clear legislative mandate."); *see* § 24–72–201, C.R.S.2015 (declaration of CORA's public policy); *Wick Commc'ns Co. v. Montrose Cty. Bd. of Cty. Comm'rs,* 81 P.3d 360, 363 (Colo.2003)(CORA reflects the public policy choices of the General Assembly); *see also Curran v. Progressive Nw. Ins. Co.,* 29 P.3d 829, 833 (Alaska 2001)("[P]ublic policy can guide statutory construction but cannot override a clear and unequivocal statutory requirement.").

¶ 55 Second, such contentions properly fall within the province of the legislature, not the courts. *See People v. Cooper,* 27 P.3d 348, 360 (Colo.2001); *City of Montrose v. Pub. Utils. Comm'n,* 732 P.2d 1181, 1193 (Colo. 1987)("It is not within the purview of this court to question the legislature's choice of policy.").

### E. Amicus Curiae Brief

¶ 56 The teachers' union contends that the trial court erred when it accepted an amicus brief. We disagree.

¶ 57 The Colorado Rules of Civil Procedure do not address this situation, and we have not found any Colorado authority that addresses it. In these circumstances, we cannot conclude that the trial court erred. Even if it did, there is no indication in the record that the amicus brief prejudiced the teachers' union. This lack of prejudice is particularly clear because this case involves issues of law that we have reviewed de novo.

### III. Conclusion

¶ 58 The trial court's order is affirmed.

¶ 59 If the teachers' union does not file a petition for rehearing, the stay that we entered under C.A.R. 8(a) will be vacated forty-two days after the entry of this judgment. *See* C.A.R. 41 (issuance of mandate). If the teachers' union files a petition for rehearing, and we decide to deny it, then the stay will be vacated twenty-eight days after entry of the order denying the petition. *See id.* Any further stays must be sought from the supreme court.

JUDGE HAWTHORNE and JUDGE NAVARRO concur.